MARY H. WILSON, Respondent, v. CHARLES N. HINMAN, Appellant.

DIVORCE— WHEN LIEN OF MORTGAGE GIVEN TO SECURE PAYMENT OF ALIMONY TERMINATES UPON DEATH OF THE DIVORCED HUSBAND. The general obligation to pay alimony, awarded to an innocent wife by a judgment of absolute divorce, ceases at the death of the husband: and the fact that a decree awarding to a wife, as alimony, a certain sum annually "so long as she shall live," required the husband, under section 1772 of the Code of Civil Procedure, to give the wife a mortgage upon real estate as security for the payment of the alimony so long as she should live, does not enlarge the husband's obligation, and the lien of the mortgage terminates upon his death.

*Wilson* v. *Hinman*, 99 App. Div. 41, reversed.

(Argued May 29, 1905; decided October 3, 1905.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered November 30, 1904, which affirmed an interlocutory judgment of Special Term overruling a demurrer to the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

The following is the question certified : " Does the complaint state facts sufficient to constitute a cause of action ? "

*Harvey D. Hinman* and *Lewis Seymour* for appellant. The payment of alimony which accrued during the life of Balis L. Hinman, the respondent's divorced husband, was sufficient to and did satisfy the conditions of the mortgage. (*Cooper* v. *Newland,* 17 Abb. Pr. 342; *Kortright* v. *Cady,* 21 N. Y. 343; *Merritt* v. *Bartholick,* 36 N. Y. 44; *Kellogg* v. *Smith,* 26 N. Y. 18 ; 1 Bishop on Mar. & Div. §§ 1430– 1434; *Romaine* v. *Chauncey,* 129 N. Y. 566 ; *Wetmore* v. *Wetmore,* 149 N. Y. 520 ; *Audubon* v. *Shufeldt,* 181 U. S. 575; Code Civ. Pro. § 1759; *Matter of Ensign,* 103 N. Y. 284; *Livingston* v. *Livingston,* 173 N. Y. 377.) The mortgage did not enlarge the respondent's rights under the decree awarding alimony. It merely protected them. (*Kellogg* v.

*Smith*, 26 N. Y. 18; *Kay* v. *Whittaker*, 44 N. Y. 565; *Thomas* v. *Fuller*, 68 Hun, 361; *Romaine* v. *Chauncey*, 129 N. Y. 566; *Matter of Ensign*, 103 N. Y. 284; *Field* v. *Field*, 15 Abb. [N. C.] 434.) The reservation to the respondent of her dower requires such a construction of the decree of divorce as will make the provision for alimony operative only during the joint lives of the respondent and her divorced husband. (*Field* v. *Field*, 15 Abb. [N. C.] 434; *Johns* v. *Johns*, 44 App. Div. 533 ; 166 N. Y. 613.)

*Henry A. Yetter* for respondent. A decree of divorce which awards to the plaintiff alimony during her lifetime, and in addition provides a method of enforcing its payment, survives the death of the defendant. (Code Civ. Pro. §§ 1759, 1772; *Burr* v. *Burr*, 10 Paige, 20; 7 Hill, 207; *Galusha* v. *Galusha*, 43 Hun, 181; *Johns* v. *Johns*, 44 App. Div. 533; 166 N. Y. 613; *Kellogg* v. *Stoddard*, 40 Misc. Rep. 94; *Wilson* v. *Hinman*, 90 N. Y. Supp. 746.) The transfer made by Balis L. Hinman to the defendant Charles N. Hinman was void as against this plaintiff. (L. 1896, ch. 547, § 227; *Wilson* v. *Hinman*, 90 N. Y. Supp. 746.)

CULLEN, Ch. J. This action is brought for the foreclosure of a mortgage. The complaint states that the plaintiff recovered a judgment of absolute divorce against one Balis L. Hinman, by which judgment, as amended, the plaintiff was awarded as alimony the sum of three hundred dollars annually "so long as she shall live, to be paid by the said defendant in equal monthly payments;" that said judgment further provided that the defendant in the action should give security for the payment of such alimony by the execution and delivery of a mortgage on certain specified real estate; that in pursuance thereof that defendant and the defendant in this action, to whom it is alleged said real estate had been fraudulently conveyed, executed a mortgage to the plaintiff conditioned for the payment of said alimony to her as long as she should live. The complaint further alleged the death of

Balis L. Hinman, the defendant in the divorce action, and that default had been made in the payment of the installments accruing subsequently to such death. The defendant demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action. At the Special Term the demurrer was overruled and that decision was affirmed by the Appellate Division, from the judgment of which an appeal is taken by certification to this court.

The objection to the maintenance of the action raised by the demurrer is that the obligation to pay alimony ceased with the death of the defendant in the divorce suit, and that is the question we are now called upon to determine. Clearly, at common law, the obligation ceased with the expiration of the life of the husband, but the common law granted no divorce which dissolved the marital tie between the parties, the divorces awarded by the ecclesiastical courts being merely what are known in this country as separations. Moreover, it it is settled law with us that the jurisdiction of courts over divorces is statutory, not inherent, and that the powers of the court are to be determined by the provisions of the statutes. Nevertheless, the principles on which alimony was awarded in the ecclesiastical courts have been generally adopted by the English courts in actions for absolute divorce which have been authorized by recent legislation, and to a certain extent have been followed by the courts of this country. It cannot be denied, however, that on the question whether the obligation to pay alimony survives the death of a husband, there is great conflict between the decisions of the courts in the various states, though the preponderance of authority is to the effect that it does not survive. (*Knapp* v. *Knapp*, 134 Mass. 353 ; *Smith* v. *Smith*, 1 Root [Conn.], 349.)

This conflict in authority is, as shown by a recent text writer (Nelson on Divorce, secs. 930, 932), principally occasioned by the differing views entertained by the courts as to the nature of alimony awarded in a decree for absolute divorce under the statutory provisions of the various states. Of course, alimony awarded on the dissolution of a marriage

differs in one element from that on a separation; in the latter case the decree merely defines the continuous duty still existing on the part of the husband to support the wife, while in the former the marital obligation is terminated, and the sole liability of the husband towards the wife springs from the decree. In some states, therefore, a judgment of absolute divorce has been considered as a decree settling the property rights of the parties and as a distribution of the assets of the *quasi* partnership thitherto existing between them (a view in cases justified by the statutory law of the state), while in others alimony awarded by a final decree has been considered as essentially of the same character as the right of support which the wife loses by the dissolution of the marriage. It is the latter view which has been adopted by all the recent decisions of this court. Thus in *Matter of Ensign* (103 N. Y. 284), Judge FINCH, while holding that a divorced wife could not share in the estate of an intestate, said: " The court is authorized to give by its decree, in the form of an allowance, a just and adequate substitute for the right of the innocent wife (the right of support to which he had previously alluded) which the divorce cuts off and forbids in the future." In *Romaine* v. *Chauncey* (129 N. Y. 566) it was held that the alimony awarded to an innocent wife by a decree of divorce in her favor is an allowance for her support and maintenance, the award of which is not the enforcement of a simple debt from the husband, but of his marital obligation of support, from which he would be relieved by the dissolution of the marriage were it not for the decree. In *Wetmore* v. *Wetmore* (149 N. Y. 520) the doctrine of the *Romaine* case, that alimony is founded upon the marital obligation of support, was reaffirmed, and it was held that a divorced wife was entitled to have the income of a trust fund created for the benefit of her husband applied upon that alimony. It is true that in two cases, *Walker* v. *Walker* (155 N. Y. 77) and *Livingston* v. *Livingston* (173 id. 377), we have held that where a decree of divorce contained no reservation of the right to modify the award of alimony the court was without power to make such modification and that

the legislature could not confer that power in the case of decrees entered prior to the enactment of the statute. We there held that the right of the plaintiff was a property right of which she could not be deprived. Those decisions, however, did not proceed on any theory that alimony was merely a debt; they recognized that the foundation for an award of alimony rested in the marital obligation of the husband's support, but held that the obligation theretofore indefinite having been liquidated by the divorce decree at a specific sum, the adjudication was final.

If this view of the nature of alimony be correct, then it seems clear on principle that the obligation to pay it ceases at the death of the husband. A wife's right of support does not survive her husband's life as a claim against his estate. On the death of the husband the wife has her dower in his real estate if he was possessed of any and her share in the personalty if he died intestate. The husband, if he choose, may dispose of all his property by will to the exclusion of the wife. It is difficult to see why the rights of the divorced wife should be greater than those she would have enjoyed had she not been divorced. Moreover, there is this practical objection to considering the decree for alimony as surviving the demise of the husband. In this country, at least till very recent times, the class of persons whose incomes are derived solely from accumulated wealth is comparatively small. The income of most men is derived from their professional or business exertions and the award of alimony is usually based on such an income, not on one accruing from accumulated property. An allowance of an amount, which it would be entirely just that a man should pay during his life to the wife whom his misconduct has compelled to seek a divorce, might be grossly extravagant if imposed as a charge upon his estate after his death and very unjust to other claimants on his property.

The respondent relies upon the case of *Burr* v. *Burr* (10 Paige, 37) as a controlling authority upon the question before us. The opinion of the chancellor in that case certainly does decide the question in his favor, but we are of opinion that it

is not controlling. The case was carried to the Court of Errors and is reported in 7 Hill, 207. The report of the case shows that in the Court of Errors the substantial contest was as to the amount of the alimony, there being in none of the opinions any discussion as to the period during which the alimony should be paid. Moreover, the case arose under a statute different in its terms from the present law. It provided that the court might make decree for the suitable support and maintenance of the wife by the husband, " or out of his property, as may appear just and proper." (2 R. S. 147, sec. 54.) Now the provision is that the court may require the defendant to provide for the support of the plaintiff as justice requires. (Code of Civ. Pro. sec. 1759.) Thus the court is now empowered only to impose a personal obligation upon the defendant. It cannot deprive him of his property, though it may compel him to give security for the discharge of his obligation, to which I shall allude hereafter. Moreover, the authority of *Burr* v. *Burr* has been much shaken, if not entirely overthrown, by the recent decision of this court in *Johns* v. *Johns* (166 N. Y. 613 ; affirmed on opinion below, 44 App. Div. 533). In that case a divorced wife brought an action against the executor of a deceased husband to enforce the payment of alimony awarded her by a decree of divorce. It was held that the obligation to pay alimony ceased at the death of the husband and did not survive against his estate. That case can be differentiated from the one before us only in one respect. In the present case the husband was directed to give security for the performance of his obligation, out of which direction sprung the mortgage in suit, while in the *Johns* case there was no such direction. On this difference in circumstance there has been founded a doctrine suggested in *Galusha* v. *Galusha* (43 Hun, 181) and apparently adopted by the learned Appellate Division in this case, that a general award of alimony against the husband terminates at his death, but if he be directed to give security for its payment it survives. Such a doctrine can rest on no solid foundation. Section 1772 of the Code provides that " where a judgment ren-

dered, or an order made  *  *  *  requires a husband to provide for the education or maintenance of any of the children of a marriage, or for the support of his wife, the court may, in its discretion, also direct him to give reasonable security, in such a manner, and within such a time, as it thinks proper, for the payment, from time to time, of the sums of money required for that purpose." This section does not purport or assume to grant to the wife alimony for any longer period nor impose upon the husband or his estate any greater obligation than that awarded by the previous provisions of the decree; it is merely security for the performance of the obligation already imposed that the court is authorized to require. It would be an unnatural construction to give it any other effect. The security required might not be in the shape of a lien on any specific property, but merely the personal obligation of sureties. In that case it would hardly be contended that the obligation of the sureties would extend beyond that of their principal. There is nothing in the opinion rendered by Judge HATCH in the *Johns* case that supports such a doctrine; on the contrary, the court expressly declined to pass upon the question as it was not involved in the case. It may very well be that by the agreement of the parties alimony might be awarded in a different form from that provided for in the statute; that is to say, the parties might agree that a gross sum should be paid as alimony, or that an allowance should be made to the wife which would bind the husband's estate after his death. An agreement of that character would in no way contravene public policy, and the performance of it would, doubtless, be enforceable by the courts. It is on this ground that the decision in *Storey* v. *Storey* (125 Ill. 608) proceeded. The present case is barren of any such feature.

The judgments appealed from should be reversed and the complaint dismissed, but without costs in any court.

The question certified should be answered in the negative.

GRAY, O'BRIEN, BARTLETT, HAIGHT, VANN and WERNER, JJ., concur.

Judgments reversed, etc.