In the Matter of the Judicial Settlement of the Account of Proceedings of WILLIAM T. JUNGE and Another, as Executors of BERNARD W. JUNGE, Deceased.

Surrogate's Court, Bronx County, September 16, 1925.

**Husband and wife — separation — agreement for separation as to payment of alimony construed to terminate on death of husband — dower — devise in lieu of dower — action to admeasure dower in property quitclaimed by husband and settlement of action by compromise constitutes election to take dower under Real Property Law, § 201.**

The alimony provision in a separation agreement will be construed to terminate on the death of the husband, where it appears from the terms of the agreement that it was the understanding of the parties that the wife should receive

alimony only during the life of the husband. The agreement in this case is construed to grant alimony only during the husband's life.

An action by a wife to admeasure dower in land quitclaimed by the husband, which action is settled by a compromise and payment by the grantee, constitutes an election, by the wife, under section 201 of the Real Property Law, to take her dower instead of a devise in the husband's will in lieu of dower. The contention by the wife that the rule stated does not apply where the property is quitclaimed, although it does apply where the property is sold by warranty deed, is without merit.

PROCEEDING for an accounting of executors.

*Clocke & Koch,* for the executors, accountants.

*Albert M. Yuzzolino,* for Sophia Junge and Irma Bruce Junge, objectors.

*Luke Le Rolle,* for Louisa P. Lummert, objector.

SCHULZ, S.:

The decedent left him surviving his wife, the respondent Sophia Junge, and his daughter, the respondent Irma Bruce. All of the objections filed have been withdrawn except those of Sophia Junge hereinafter referred to, and the matter comes before me upon an agreed statement of facts. On the 12th day of April, 1911, the decedent and his wife, then living apart, entered into an agreement by which the decedent bound himself to pay a certain weekly sum to his wife, and the first question to be determined is whether the provision for these payments survives the death of the decedent so as to make his estate liable for the same during the life of his widow.

As stated in the memorandum of the executors, it has been held that where alimony is awarded in an action for absolute divorce, even though the decree provides that the payments are to be made during the life of the wife, the right thereto ceases upon the death of the husband. The reason for this conclusion is succinctly stated by Chief Judge CULLEN in the case of *Wilson* v. *Hinman* (182 N. Y. 408). He makes a distinction, however, between the provision in a decree for divorce and an agreement between the parties, for he says: " It may very well be that by the agreement of the parties alimony might be awarded in a different form from that provided for in the statute; that is to say, the parties might agree that a gross sum should be paid as alimony, or that an allowance should be made to the wife which would bind the husband's estate after his death. An agreement of that character would in no way contravene public policy, and the performance of it would, doubtless, be enforceable by the courts. * * *," citing *Storey* v. *Storey* (125 Ill. 608). (See, also, *Barnes* v. *Klug,* 129 App. Div. 192; *Johns* v. *Johns,* 44 id. 533; affd., 166 N. Y. 613; *Galusha* v. *Galusha,* 116 id. 635; *Carson* v. *Murray,* 3 Paige, 483; *Mann* v.

*Hulbert,* 38 Hun, 27.)   Hence it follows that the reasoning applied in *Wilson* v. *Hinman* (*supra*), with respect to alimony decreed by the court, is not conclusive upon the question presented here, and it becomes necessary to examine the agreement to see whether or not the parties did provide for the term of payment.

The part of the contract dealing with the payment to be made is as follows:

" *Second.* The party of the first part agrees that he shall pay to the party of the second part the sum of Twenty ($20.00) Dollars per week on Saturday of each week commencing on Saturday, April 15th, 1911, which shall be for the support and maintenance of the said party of the second part and her daughter Irma."

It will be observed that no period of time is mentioned, and while it is true that the presumption is that personal representatives of a decedent shall, upon his death, be bound by the latter's contracts (*Barnes* v. *Klug, supra; Kernochan* v. *Murray,* 111 N. Y. 306), this does not mean that they necessarily become responsible for payments after his death.   Their liability is only that of the decedent, and if the liability for payments terminated upon his death, then his personal representatives also have no further liability.

In the absence of a specific provision stating the term during which the payments are to be made, it becomes necessary to examine the whole agreement to see if from it such an intent is apparent.

The reason for making the agreement is stated in it as follows: " Whereas, the parties hereto have decided   *   *   *   that an agreement be entered into, which shall govern their conduct towards each other *so long as they shall continue to live separate and apart.*" (Italics mine.)   This would seem to indicate that it was intended to operate only during the life of the one dying first, after which it was no longer possible for them to *live separate and apart.*

In a later paragraph which provides that the father may have the care of the child at different times during vacation, we find a provision that the allowance of twenty dollars a week shall continue to be paid without reduction, " except that if, for any reason, the general custody of the said child shall at some future time pass to the party of the first part, then and in that event the amount of the said allowance shall be readjusted," showing there was not the idea of absolute permanency of payment during the life of the wife.

There is a further provision that so long as the payments mentioned are made, no debts will be incurred by the wife for which the husband will be liable.   The husband's liability for the debts of his wife would cease upon his death.

In the absence of specific directions that the payments shall

be made during the life of the wife, and in view of the provisions quoted, I find nothing to warrant the assumption that the same were to continue after his death and there is no presumption to that effect that I know of.

It is also to be noted that prior to the making of the contract, to wit, on the 18th day of July, 1910, the decedent executed a last will and testament which contained provisions in favor of his wife by which he appears to have intended to provide for her after his death. If the agreement was to bind his estate to the making of payments after his death, it is fair to assume that he would have made some change in his will.

The objection based upon the contention that the estate is so liable is dismissed.

In the will which the decedent executed he made certain provisions for his wife in the way of income from a trust fund which he attempted to establish, and provided with respect thereto as follows: " I expressly declare that the gift herein made to my wife, if accepted by her, shall be taken in lieu of dower    *    *    *."

The decedent owned no real property at the time of his death for, on the 26th day of September, 1916, two parcels of real estate which he then owned were conveyed by him to another by quit claim deeds. The widow did not join in these deeds, and after his death began an action against the grantee and the executors of the decedent's estate for an admeasurement of her dower interest which claim was thereafter compromised by the payment of $2,125 by the grantee to the widow, the estate of the decedent paying no part of such sum. The second question to be determined is whether the beginning of this action, and her acceptance of a compromise, was an election by the widow and resulted in her being deprived of the provisions made for her benefit under the will.

Section 190 of the Real Property Law provides that a widow shall be endowed of the third part of all lands whereof her husband was seized of an estate of inheritance at any time during marriage. The decedent had owned the real property in question during marriage. Hence the widow had an inchoate right of dower therein which became absolute upon his death, notwithstanding the fact that at the time of his death he had alienated the same. (Real Prop. Law, § 203.)

As there was a provision made for her in the will of the decedent, stated to be in lieu of her dower, she was obliged to make her election whether she would take under the will or be endowed, but she was not entitled to both (Real Prop. Law, § 200) unless such was clearly shown to have been the intention of the decedent.

Her election affected not only the lands of which the decedent

was seized at the time of his death, but also those which he had conveyed to others as stated. (*Steele* v. *Fisher*, 1 Edw. Ch. 435; *Palmer* v. *Voorhis*, 35 Barb. 479.) Her act in bringing an action for admeasurement of dower within one year of the death of the decedent constituted an election under section 201 of the Real Property Law, and hence her rights under the will are ended.

Counsel for the widow in effect concedes that this would be so if the deeds by which the decedent alienated the property had been warranty deeds, in which event he suggests recourse might be had to the estate of the decedent for the amount that the grantee paid for the dower. He contends, however, that as quit claim deeds only were given, no liability of that kind arose, and hence if no dower had been demanded, the grantee would profit thereby. This is upon the assumption, however, that the grantee paid less for the property because a quit claim deed was given, and of this there appears to be no proof. But even if this were so it would not be determinative of the question.

Counsel cited the case of *Palmer* v. *Voorhis* (*supra*), on the theory that a warranty deed had there been given. The opinion, however, states that the lands were conveyed " by deed of release and quit claim." To make certain of the matter, I have procured a copy of the record of the document. It appears that it was the kind of deed stated in the opinion. The case is, therefore, practically like the one before me and I reach the same conclusion there arrived at by the General Term and hold that as the widow elected to take her dower in the place of the testamentary provisions in her favor, she thereby waived her rights to the latter.

In the briefs of counsel of several of the parties a third matter is referred to, namely, whether in view of the election of the widow to take her dower, the respondent Irma Bruce is entitled to receive the corpus of the trust fund on arriving at the age of twenty-five years, even though the widow is still alive. This matter was not raised by objection or otherwise and is not necessary to be adjudicated at this time. When the respondent named has reached the age stated and the trustees are accounting, if there is still doubt as to the same it may then be determined.

Costs are awarded to the petitioner payable out of the estate. Settle decision and decree accordingly.