In the Matter of the Will of NICOLAS S. EMBIRICOS.

Surrogate's Court, New York County, December 13, 1944.

*Davis Polk Wardwell Sunderland & Kiendl* for Guaranty Trust Company of New York as administrator, petitioner, and as guardian of Stamati Nicholas Embiricos, an infant.

*Leve Brothers, Hecht & Hadfield* for Ann Embiricos, as administratrix, petitioner.

*Christy George Peters* for George S. Embiricos, respondent.

*John J. Fay,* special guardian of Stamati N. Embiricos, an infant.

FOLEY, S. In this proceeding for the judicial settlement of the account of the administrators, a construction of certain of the provisions of a separation agreement executed by the decedent and his wife Ann Embiricos and instructions as to the mode of carrying out such provisions are sought.

The separation agreement was entered into on April 30, 1941. Shortly thereafter, on July 1, 1941, the decedent died, intestate and a nonresident of this State. He left him surviving his wife and an infant son, now seven years of age.

By its terms the wife waived and released all her interests in the estate of her husband under the Decedent Estate Law and the laws of dower, descent and distribution of any jurisdiction in which either of them might own or hold property. In lieu thereof certain benefits were provided for her by the agreement which constituted her a creditor of his estate. (*Matter of Bloomingdale*, 278 N. Y. 435.)

Paragraph " 4 " of the agreement provides that the husband shall pay to the wife for her separate maintenance and support and for the maintenance and support of their child the sum of $800 per month " so long as said wife remains either married to the husband or single or the widow of said husband."

Paragraph " 11 " of the agreement provides that in the event either the husband or the wife shall sue for and be granted a decree of absolute divorce " and the wife shall thereafter remarry ", then the payments called for under paragraph " 4 " in the sum of $800 per month shall cease and determine and the husband shall not thereafter be required to pay any sum whatsoever for the support or maintenance of the wife. However, he agreed to pay to her the sum of $250 per month after remarriage of the wife for the support and maintenance of their son until he shall have reached his majority or completed his education provided the wife has the custody of the son.

Although the event has not yet occurred, the Surrogate is nevertheless asked to determine whether the payments to the wife under paragraph " 4 " of the agreement should continue to be made in the contingency of her remarriage. The likelihood of such a happening appears to be present for it is now urged on her behalf that a subsequent marriage by her would not operate to deprive her of the right to receive, as the widow of decedent, the benefits provided for her in the instrument. I do not agree with this contention.

Determination of that issue, of course, depends upon the construction of the word " widow " as used by the parties to the agreement. Specifically the question is: Is a woman whose

husband has died and who has remarried, nevertheless still his widow? The answer must be no.

Resort to authoritative dictionaries and to decisions in this State and in other jurisdictions indicates that the word "widow" has a fixed and definite meaning, to wit, a woman who has lost her husband by death and has not married again. Such is the definition found in Webster's New International Dictionary [2d ed.] and was accepted by the court as its meaning in the case of *Inslee* v. *Rochester & Syracuse Railroad Co.* (214 App. Div. 680), and by the Surrogate in *Matter of Crook* (140 Misc. 720). In Bouvier's Law Dictionary [Baldwin's Century ed.] a widow is defined as "An unmarried woman whose husband is dead. In legal writings, widow is an addition given to a woman who is unmarried and whose husband is dead. A widow who has married again cannot be a widow; 20 Q. B. D. 103." In the case of *Guardians of Poor of Amersham Union* v. *Guardians of Poor of City of London Union* (20 Q. B. D. 103), above cited, the rights of an infant to a so-called settlement under English law depended upon whether the infant had a "widowed mother". The court said: "Now this child did not become chargeable until after the second marriage of her mother; at that time, the time when she became chargeable, she had no father, for he was dead, and she had no 'widowed mother,' for her mother had contracted a second marriage and was no longer a widow * * *." Black's Law Dictionary describes a "widow" as a woman whose husband is dead and who has not married again. In Corpus Juris (Vol. 68, p. 263), the primary definition of "widow" is stated as follows: "A word of Sanskrit derivation, meaning without a husband or lack of a husband, said to be as old as the language itself, the meaning of which is familiar, well fixed, and certain, and which popularly and legally means a woman who has lost her husband by death and has not taken another * * *."

In *Matter of Campbell* (177 Misc. 426) Surrogate MILLARD stated that "A gift to a wife ' as long as she remains my widow ' is a gift terminable upon death or remarriage ", citing *Matter of Hiram Clickman* (116 Misc. 540). In *Matter of Hiram Clickman* (*supra*), the testator devised his estate to his wife to hold the same "as long as she remains my widow ", with the right to dispose of it as she may see fit. The Surrogate held that whether or not she took an absolute fee could only be determined at her death or by her *remarriage* prior thereto. In *Jackson* v. *Merrill* (6 Johns. 185), where the testator left to his wife sole possession of his entire estate "which she shall enjoy, so long as she shall continue my widow; after it shall

fall to my children \* \* \* '', it was held to be the intention of the testator from the use of the word '' widow '' that upon the death or *marriage* of his widow the real estate should go to his children. The status of widowhood must have been considered by the court in each of the foregoing cited cases in order for it to have reached the conclusion that remarriage determined the rights of the widow.

In the Pennsylvania case of *Commonwealth* v. *Powell* (51 Pa. 438, 440) the court said: '' In common parlance, we know the term ' widow ' means an unmarried woman \* \* \*. The word is so entirely and exclusively descriptive of an unmarried condition, having once been married, that any other sense would be figurative.''

The extent to which the rule that widowhood of a woman ceases upon her remarriage is generally accepted is particularly illustrated in *Knight* v. *Mahoney* (152 Mass. 523). In that case the testator devised to his wife all his real estate '' so long as she remains my widow ''. After his death, the wife married again. Apparently the court did not even find it necessary to pass upon the question as to whether after marriage the wife was still the widow of the testator, but assuming that she was not, proceeded to determine whether or not there was an unlawful restraint against remarriage contained in the will. It said: '' If a widow prefers to take under the will of her husband, and he has chosen by his will to give her the use of property during her widowhood only, intending that, if she marry again, she should rely thereafter for her support upon her future husband, we think that this intention ought not to be defeated on any ground of public policy; and the decisions on this question do not proceed upon any distinction between a limitation of the duration of the estate given to the widow and a condition subsequent, whereby the estate giver is devested on her remarriage.'' (See, also, in other jurisdictions *Kearns' Appeal*, 120 Pa. 523; *Block* v. *P. & G. Realty Co.*, 96 N. J. Eq. 159; *Rosenbloom* v. *Southern Pac. Co.*, 59 Cal. App. 102.)

The agreement shows evidence of having been prepared by skillful lawyers whose care in the use of appropriate words is clearly revealed in the text. There must therefore be ascribed to such words their natural, ordinary and familiar meaning. It is immaterial whether the term '' widow '' is used in a will, statute, agreement or other instrument. It has the same meaning in each case and refers to a woman who has lost her husband by death and has not taken another.

The Surrogate accordingly holds that the wife of the decedent is entitled as his widow to the monthly payments of $800

until such time as she shall remarry and, in the event that she remarries, all payments to her shall cease except the sum of $250 directed to be paid to her as provided in paragraph " 11 " for the support and maintenance of her infant son.

The Surrogate further holds that the terms of paragraphs " 5 " and " 6 " of the separation agreement, which provide for the increase or decrease of such monthly payments to the wife depending upon whether the net income earned by the husband annually exceeded or was less than $30,000, were intended to be effective only in the lifetime of the husband. They are therefore not applicable to the present situation.

The remaining questions upon which the instructions of the Surrogate are requested are disposed of as follows:

(1) Since the present value of the corpus of the estate, after the payment of administration expenses, will only approximate $250,000, the entire fund will be required to be set aside as the capital sum under the separation agreement for the payment out of the income thereof of the specified amounts to the widow.

(2) The administrators of the estate, Ann Embiricos and Guaranty Trust Company, will be authorized to continue to hold the fund for the purposes of carrying out the provisions of the agreement.

(3) If the income of the fund is at any time insufficient to meet the specified periodic payments to the widow, principal may be invaded to the extent necessary to make up the deficits.

(4) The administrators shall have the power and duty to invest the reserved moneys in legal securities. Their commissions shall be fixed by appropriate decree in the accounting proceeding at the rates fixed for the commissions of an administrator under section 285 of the Surrogate's Court Act.

(5) The capital sum set aside shall be chargeable with the reasonable medical and dental expenses of the infant and the expenses of his education or tuition after he has reached the age of eight years in accordance with the terms of paragraph " 8 " of the separation agreement and subject to the supervision of the Surrogate.

(6) If at any time in the future the whole or any part of the capital sum set aside, or the income thereof, shall not be required to make the payments to the widow, such fund shall be paid directly to the guardian of the property of the infant, or directly to the infant if he has reached the age of twenty-one years.

(Other directions included in the original decision of the Surrogate omitted because of their subordinate importance.)

Proceed accordingly.