PATIENCE M. COOKE, Appellant, v. CORA T. COOKE, as Executrix of GORDON C. COOKE, Deceased, Respondent.

Second Department, July 2, 1956.

*William F. Bleakley, Charles Brieant, Jr., Isidor Enselman* and *George Dines* for appellant.

*Allan R. Campbell* and *Robert Garlock* for respondent.

BELDOCK, Acting P. J. Appellant, the divorced wife of Gordon C. Cooke, deceased, seeks to recover from his estate installments of alimony alleged to have accrued after his death, pursuant to the terms of a written separation agreement which was later incorporated into the decree of divorce.

The principal question to be determined is whether, under the agreement, after the husband's demise his former wife has a cause of action against his estate to recover the prescribed

monthly alimony payments for the period beginning at his death and continuing until her death.

Appellant and the deceased, Gordon C. Cooke, were married in 1917, and have one adult daughter. On or about June 13, 1952 appellant and her husband entered into the separation agreement. She was then 60 and he 55 years of age. The agreement was occasioned by the fact that the husband was then living with respondent (now the executrix of his estate) by whom he had a son, born a few months earlier, that is, in February, 1952. The husband intended to obtain a divorce from appellant in order to marry respondent. He obtained the divorce in Florida on August 13, 1952 and subsequently he married respondent. He died about two years later, on July 20, 1954. He left a last will and testament which he had executed on June 11, 1952, two days before he had executed the separation agreement. His estate is valued at approximately $205,000.

The preamble of the agreement recites that the parties are living in a state of separation; that the husband is about to institute divorce proceedings against appellant, and that they desire: (a) to agree upon arrangements for appellant's "support and maintenance" during the period of their separation; (b) "to adjust their property rights" should a divorce be granted; and (c) to adjust appellant's "right * * * to alimony, if any, without the necessity of litigating the same, should a divorce be granted".

To effectuate these three objectives the parties agreed:

(a) That "so long as the parties * * * shall live in a state of separation," the husband would pay her $400 a month for her support and in addition would pay the carrying charges on their residence in Maplewood, New Jersey.

(b) That in the event a decree of divorce be granted, it "shall contain the following provisions in full and complete satisfaction of any claims which they may have against each other with reference to their property or alimony:"

(1) A provision that the husband "shall pay or cause to be paid" to appellant "during her lifetime" $475 a month. This provision, however, is coupled with the qualifying proviso that the husband is privileged to reduce such monthly payments in the event his net income for any year be less than $10,000. In that event it was specified that the husband may limit the alimony payments to 50% of his net income during such year, on condition however, that he shall first have submitted or made available to appellant his records, accounts and other evidence establishing his reduced income.

(2) A provision that the husband shall transfer to the appellant all his right, title and interest to their residence in Maplewood, New Jersey; to its furniture and fixtures; and to all mortgage escrow funds with respect to the mortgage upon such residence.

(3) A provision that appellant shall execute and deliver, upon request, any document "releasing or transferring any right of dower or other interest in any" of the husband's property, and a provision that appellant is "hereby barred from any right of election to take against" the husband's will "or from any statutory right in the event he dies intestate."

(4) A provision that for the performance of his obligations the husband "binds himself, his heirs, executors, administrators and assigns."

The Florida divorce decree specifically incorporates the agreement, ratifies, adopts and confirms it, and orders the parties to perform it.

As already noted, on June 11, 1952 two days before signing the separation agreement, the husband had executed his last will and testament. Under this will he made the following dispositions: To appellant he gave: (1) the residence in Maplewood and all the furniture and household effects in it; (2) $10,000, and (3) one third of the residue of his estate if she survive him, and if not, then such one third to their daughter. To respondent, whom he shortly thereafter married, he gave two thirds of the residue if she survive him, and if not, then such two thirds to their son.

The trial essentially was confined to the reception in evidence of the three documents mentioned (the separation agreement, the divorce decree and the will) and proof showing: (1) that decedent's income had fluctuated from year to year, and (2) that appellant had accepted the benefits under decedent's will.

After trial, the learned Trial Justice granted a motion to dismiss the complaint for insufficiency, such motion having been made at the opening of the trial and decision thereon having been reserved. The Trial Justice stated, however, that if he did not grant such motion he would have granted the motion to dismiss made "at the close of the plaintiff's case" or he would have dismissed the complaint at the close of the entire case. The judgment as entered, however, simply dismisses the complaint "on the merits."

It is our opinion that the complaint is insufficient and that, in any event, on the basis of all the proof adduced it was properly dismissed on the merits.

As indicated by the allegations of the complaint, this action is based on the written separation agreement. But that agreement will be searched in vain for any promise or undertaking by the husband to pay appellant permanent alimony after the granting of the divorce. The agreement merely sets forth *in extenso* the specific provisions which the divorce decree shall contain " in the event a decree of divorce shall be granted to either party ". The divorce decree, by incorporating and adopting the agreement, in effect does contain such specific provisions. But the agreement itself does not. Actually, it contains only the decedent's undertaking that as long as he and appellant " shall live in a state of separation " he will pay her $400 a month " for her support and maintenance " and will also pay the carrying charges on their residence. In other words, the agreement was intended to provide for appellant's support while the parties remained in a state of separation but not divorced; whereas the divorce decree was intended to provide for appellant's support after the parties had been judicially divorced.

Hence, this " was not a situation where a contractual obligation was created to exist independently of the court's action ", and in the absence of such contractual obligation appellant is necessarily relegated to the divorce decree for the determination of her rights (cf. *Murray* v. *Murray*, 278 App. Div. 183, 188; *Goldman* v. *Goldman*, 282 N. Y. 296). As the complaint here is expressly based on the separation agreement and not on the divorce decree, it is palpably insufficient.

Assuming, however, that the complaint be deemed to be based on the divorce decree, it is still insufficient. It is true that the decree, by incorporating the agreement, does provide that the alimony payments shall continue during appellant's lifetime. But it is well established that a divorce decree which provides merely that alimony payments shall continue during the wife's life or during her natural life, imposes upon the husband only the continuance of his former marital obligation, that is, the obligation to make the payments only so long as *he* may live (*Wilson* v. *Hinman*, 182 N. Y. 408; *Johns* v. *Johns*, 44 App. Div. 533, affd. 166 N. Y. 613; *Matter of Grimley*, 200 Misc. 901, 902; *Matter of Porter*, 208 Misc. 611). It would be different, of course, if in addition to the single provision for the payment of alimony during the lifetime of the wife, the other provisions of the incorporated agreement expressly disclosed an intent to have the alimony payments continue after the husband's death (cf. *Whitney* v. *Whitney Elevator & Warehouse Co.*, 183 F. 678, 680–682). But here, as will be shown more fully here-

inafter, the other provisions of the incorporated agreement evince a contrary intent; and hence, even under the decree, appellant is precluded from claiming alimony after the husband's death (cf. *Matter of Bell,* 121 Misc. 795, 796; *Wilson* v. *Hinman, supra*).

Appellant, however, has pleaded and tried this case, not only on the theory that it is based upon the separation agreement, but on the assumption that the separation agreement itself (apart from the decree) directs that after the divorce, the payment of alimony shall continue during her lifetime. And the trial court has decided the case on that basis. But even on that basis appellant cannot prevail.

It is well settled, of course, as already indicated, that, without regard to the divorce decree, by an independent agreement the obligation to pay alimony may be voluntarily extended beyond the husband's death and imposed upon his estate, if the agreement expressly or by clear implication so provides (*Wilson* v. *Hinman,* 182 N. Y. 408, *supra; Matter of Porter,* 208 Misc. 611, *supra; Matter of Grimley,* 200 Misc. 901, 902, *supra; Matter of Junge,* 125 Misc. 707, 708–709; *Barnes* v. *Klug,* 129 App. Div. 192, 195).

Appellant contends that the agreement here does make such express provision for the continuance of the obligation after the husband's death. The learned Trial Justice found otherwise. We fully agree with him.

Appellant relies primarily on the single statement, contained in paragraph " 1. (a) " of the agreement, that, if a divorce be granted, the alimony payments of $475 a month shall be made " during her lifetime ". The intent of any document, however, may not be determined by an isolated statement culled from it, particularly where, as here, the agreement contains other qualifying provisions which cast serious doubt upon the meaning of the isolated statement, and where, as here, the surrounding circumstances point to a contrary meaning. To give heed to the admonition of Judge LEARNED HAND, recently reiterated by Judge FULD, " courts should be wary of making ' a fortress out of the dictionary ', since there ' is no more likely way to misapprehend the meaning of language   *   *   *   than to read the words literally, forgetting the object which the document as a whole ' seeks to achieve." For the true " intent and meaning are to be gathered, not alone from the language and terms of the instrument itself, but also from the conditions and circumstances extrinsic to it." (*Spencer* v. *Childs,* 1 N Y 2d 103, 106–107.)

Reading the separation agreement in its total context, it cannot be said that, either expressly or by clear implication, there is imposed upon the husband's estate any obligation to make the payments of alimony after his death. In fact, it must be held that the clear implication is to the contrary. And these conclusions are confirmed and fortified by a reading of the agreement in the light of all the " conditions and circumstances extrinsic to it ", as they appear in the proof adduced before the Trial Justice.

The three documents, viz., the separation agreement, the divorce decree and the will, are contemporaneous instruments. As such, they must be read together (cf. *Nau* v. *Vulcan Rail & Constr. Co.*, 286 N. Y. 188, 197; *Green Point Sav. Bank* v. *Central Gardens Unit No. 1,* 279 App. Div. 1078; *Salinas* v. *Salinas,* 187 Misc. 509, 513). So read, they purport to make a present, final and ultimate disposition in relation to every matter affecting appellant and the husband, namely: (1) their marital status; (2) her right to permanent alimony; and (3) her right to share in his estate after his death. Indeed, the agreement itself states that " in the event a decree of divorce shall be granted to either party " the provisions set forth in the agreement (and intended to be incorporated in the decree) shall be " in full and complete satisfaction of any claims which they may have against each other with reference to their property *or alimony* " (italics added).

The agreement contains many other indications which, in the aggregate, clearly show that, if the husband predeceased appellant the payment of alimony was intended to continue during his life; whereas, if he survived her, then only was the payment of alimony to continue during her life. Thus:

(1) By virtue of the ninth paragraph, in the event a divorce is not granted the alimony payments therein prescribed of $400 a month, are to continue only as long as the parties " shall live in a state of separation ".

(2) Under the paragraph numbered " 1. (a) ", in the event a divorce is granted the obligation to pay alimony of $475 a month is specifically enjoined upon the husband only, and under the paragraph numbered " 1. (b) ", he is expressly given the privilege to reduce this sum to 50% of his net income during any year in which his income shall be less than $10,000, provided he first submits his books and records to appellant.

(3) Under the eighth paragraph, the parties, in effect, state that both as to property rights and as to alimony the agreement is in lieu of " litigating the same " in the divorce action.

(4) Under the paragraph numbered "3." appellant is required to execute and deliver to the husband any document requested by him, releasing any interest which she may have or claim in any of his property.

All these provisions obviously are predicated on the continued existence of the husband. They evince an intent to make the agreement operative during appellant's life if she predeceases him and during his life if he predeceases her. They contemplate and embrace a reciprocal settlement, waiver and release *in præsenti* of all claims which, at that time or in the future, either one may have or may assert against the other. When such an intent is disclosed the alimony necessarily ceases upon the husband's death (cf. *Matter of Porter*, 208 Misc. 611, 612, *supra*; *Matter of Baratta*, 199 Misc. 246, affd. 279 App. Div. 992).

The dispositions contained in the husband's will and the fact that he died without changing them also furnish most persuasive evidence of the fact that the agreement was not intended to impose upon the husband's estate the obligation to pay alimony after his death. As stated, he executed his will just two days before the separation agreement. The two documents were practically simultaneous. The will gave appellant not only the residence and $10,000, but also one third of the residuary.

Surely, with an estate of approximately $205,000, it is hardly likely that, in addition to such substantial bequests to appellant the husband intended or understood that she also would be empowered to deplete the remainder of his estate by a large claim for alimony after his death. Such a claim would substantially diminish the estate even if the claim were to be limited to appellant's normal life expectancy, and it could consume the whole remainder if, as is entirely possible, she should live much beyond such expectancy. It is inconceivable that he intended to disinherit, in whole or in part, his daughter by appellant, his son by respondent, and respondent herself whom he subsequently married. Yet, that would be the inevitable result if the agreement be construed in the manner urged by appellant.

Where, either by will or otherwise, an independent and substantial bequest or allowance has been made for the wife's support after the husband's death, any decretal or contractual provision which merely prescribes alimony payments during the wife's life, is usually construed to obligate the husband to make such payments only as long as he lives (cf. *Johns* v. *Johns*, 44 App. Div. 533, 538, affd. 166 N. Y. 613, *supra*; *Matter of Porter*, 208 Misc. 611, *supra*). "If the agreement was to bind

his estate to the making of payments after his death, it is fair to assume that he would have made some change in his will '' (*Matter of Junge*, 125 Misc. 707, 710, *supra*).

There are numerous cases, of course, in which it has been held that an *inter vivos* agreement between husband and wife was intended to confer upon the wife the right to alimony after the husband's death (*Durland* v. *Syracuse Trust Co.*, 230 App. Div. 786; *Barnes* v. *Klug*, 129 App. Div. 192, *supra*; *Matter of Grimley*, 200 Misc. 901, *supra*; *Matter of Embiricos*, 184 Misc. 453 [see original file papers]; *Matter of Herb*, 163 Misc. 441, 445, 448–449; *Matter of Fuller*, 151 Misc. 387, 388, affd. 242 App. Div. 623; *Matter of Tashenberg*, 149 Misc. 124; *Babcock* v. *Babcock*, 147 Misc. 900, affd. 239 App. Div. 884; *Matter of Golding*, 127 Misc. 821). But all these cases are readily distinguishable either on the ground that there the agreement itself contained specific provisions showing such an intent or on the ground that there the surrounding circumstances unequivocally pointed to such an intent, as in a situation where, after the husband's death, the contractual payments constitute the sole or principal source of the wife's support for the rest of her natural life.

Such cases, however, can have no application to the case at bar. As already indicated, the agreement and the surrounding circumstances here (a) negate an intent to have the alimony payments continued after the husband's death; (b) disclose the fact that ample provision has been otherwise made for appellant's support after the husband's death; (c) show a definite intent to settle *in præsenti* both the future marital status and property rights of each party in relation to the other, and (d) show an intent not to leave either with an enforcible claim against the other's estate.

Accordingly, it must be held that the complaint fails to state a cause of action and that, on the basis of all the proof adduced at the trial, appellant has failed to establish any cause of action.

There is also an appeal from an order denying appellant's motion for a new trial made after the entry of the judgment herein. That appeal might be dismissed because appellant, in effect, has abandoned it by failing to urge it in her two printed briefs submitted to this court. We prefer nevertheless to consider such appeal on the merits.

The only reason for seeking the new trial is that appellant now desires to adduce the testimony of the attorney who drew the separation agreement. Such testimony, it is stated, will disclose conversations between the draftsman and the husband to the effect that the alimony payments were meant to continue

after the husband's death. Appellant apparently was not present at such conversations.

The record shows that the draftsman was present during the trial and appellant failed to avail herself of the opportunity to submit his testimony in rebuttal. It was only after the adverse decision of the Trial Justice that appellant, as an afterthought, decided to move for a new trial in an effort to bolster her case by this additional testimony.

Under the stated circumstances the motion for a new trial was properly denied. In any event, such belated testimony would be entitled to little credence and would not change the result, first, because it is testimony as to conversations with a person since deceased, and, second, because the weight of the credible evidence, and particularly the documentary proof, is to the contrary.

The judgment should be affirmed, with costs, and the order should be affirmed, without costs.

HALLINAN, J. (dissenting in part). As I read the complaint, this is an action to recover installments, payable to appellant " during her lifetime " by respondent's testate, pursuant to the provisions of a separation agreement which, in accordance with its terms, was made part of a Florida decree of divorce thereafter obtained by the decedent. The action is therefore essentially founded upon a foreign decree of divorce. In essence, the amended answer set up the claim, and the Trial Term held, that the decedent's will, executed prior to the separation agreement, made such other provision for appellant, as part of a plan for continuing her support, after his death, as precludes the continuance of support for her pursuant to the separation agreement or decree of divorce.

In my opinion, the terms of the separation agreement were clear and unambiguous. The intent of the parties had to be found within its text, unaided by an inconsistent new term, not expressed or suggested therein, to the effect that upon the husband's death the agreement should terminate and the provisions of his earlier will should operate. (*Nichols* v. *Nichols,* 306 N. Y. 490.) Moreover, since the separation agreement was made an integral part of the Florida decree of divorce, as the majority opinion concedes, our domestic courts are without power to reform either the separation agreement or the foreign decree which approved and adopted it " by implying nonexistent terms." (*Nichols* v. *Nichols, supra,* p. 499.) Because the foreign decree was obtained by the husband, he and his representatives are also estopped from attacking the agreement in this jurisdiction. (*Graham* v. *Hunter,* 266 App. Div. 576, 581.)

While ordinarily "alimony" awarded by a matrimonial decree ends with the death of the husband, a covenant that a continuing allowance should be paid to the wife for the duration of her life may be made binding upon the husband's estate after his death. (*Wilson* v. *Hinman*, 182 N. Y. 408, 414; *Matter of Grimley*, 200 Misc. 901; *Babcock* v. *Babcock*, 147 Misc. 900, affd. 239 App. Div. 884; *Matter of Embiricos*, 184 Misc. 453.) Such payments do not constitute "alimony" but flow as the *quid pro quo* for the wife's relinquishment of claims to the husband's property where the underlying agreement, as in the case at bar, provides for adjustment of property rights. (*Durland* v. *Syracuse Trust Co.*, 230 App. Div. 786; *Goldfish* v. *Goldfish*, 193 App. Div. 686, 689.) Accordingly, it is in my opinion error to hold as a matter of law that the payments to appellant herein constituted "alimony" which terminated upon the decedent's death and to find, without actual evidentiary basis therefor, that the parties to the separation agreement intended that such payments should end with the husband's death.

In my opinion, the provision for reduction of the payments to the wife when the husband's income fell below $10,000 a year contemplated a contingency which could eventuate only during the lifetime of the husband and, in the absence of express provision therefor, was a matter which could have no effect upon the rights of the appellant during her lifetime after the husband's death. It will be noted that the payments to appellant are directed by one paragraph of the separation agreement separately from another paragraph granting a reduction in such payment if the husband's income fell below $10,000 a year. The two paragraphs are not connected by any text which states or implies that payments to appellant shall cease upon the decedent's death. Under the rule that meaning must be given to every provision of an agreement, and that "no provision of a contract should be left without force and effect" (*Muzak Corp.* v. *Hotel Taft Corp.*, 1 N Y 2d 42, 46), the separate paragraph directing the payments to appellant "during her lifetime" may not be left without operative meaning. The function of the courts is to give effect to the parties' expressed intent "to the extent that they evidenced what they intended by what they wrote" (*Raleigh Associates* v. *Henry*, 302 N. Y. 467, 473), and not to supply, "under the guise of construction or interpretation" terms not expressly set forth in the parties' agreement (*Sullivan Co.* v. *International Paper Makers Realty Corp.*, 307 N. Y. 20, 25).

In addition to the foregoing, it is the settled law of this State that the subsequent separation agreement and the decree of divorce did not serve to revoke the earlier will executed by the decedent, and the principle has become fixed that no doctrine of implied revocation obtains in this jurisdiction. (1 Davids on New York Law of Wills, § 393; Decedent Estate Law, §§ 34, 39, 40; *Matter of Simpson,* 155 Misc. 866; *Matter of Mortensen,* 157 Misc. 717, 722; *Matter of Sussdorff,* 182 Misc. 69, 71; *Matter of Crounse,* 168 Misc. 359, 361; *Matter of Silberstein,* 108 N. Y. S. 2d 88, 90; *Schoonmaker* v. *Crounse,* 261 App. Div. 77; *Matter of Macomber,* 274 App. Div. 724, 725.) Though he was free to change the terms of this will, his continuing failure to do so for a period of about two years after the making of the separation agreement and after the decree of divorce was entered, lends color to the view that he intended the will to operate without modification. (*Matter of Cote,* 195 Misc. 410; *Matter of Swords,* 120 Misc. 427.) In any event, the courts may not admeasure the quantum of consideration that motivated his generosity in the agreement (*Mandel* v. *Liebman,* 303 N. Y. 88, 93–94), or speculate over " unequal or unjust " disposal of his property by an otherwise valid will (*Matter of Radley,* 228 App. Div. 119, 121).

The judgment should be reversed and judgment should be granted in favor of appellant for the relief demanded in the complaint and the order denying the motion for. a new trial should be affirmed.

MURPHY and UGHETTA, JJ., concur with BELDOCK, Acting P. J.; HALLINAN, J., concurs in the affirmance of the order but dissents from the affirmance of the judgment and votes to reverse the judgment and to grant judgment in favor of appellant for the relief demanded in the complaint, in opinion.

Judgment affirmed, with costs, and order affirmed, without costs. [See *post,* p. 810.]