In the Matter of the Estate of MORTIMER WOSNITZER, Also Known as MORTIMER WARREN, Deceased. DIANA WARREN, as Executrix of MORTIMER WOSNITZER, Deceased, Respondent; VICTORIA WOSNITZER, Appellant.

First Department, April 17, 1975

*Michael W. Holland* of counsel *(George Washington Herz* with him on the brief; *Herz & Ryder,* attorneys), for appellant.

*Stanley M. Estrow* for respondent.

LUPIANO, J. The order of the Surrogate's Court, Bronx County (GELFAND, S.), entered September 3, 1974, which denied petitioner's application to compel an accounting, should be reversed on the law and the matter remanded for a hearing as to the issue of whether, under the separation agreement between petitioner and her former husband, after the latter's demise, petitioner has a cause of action against his estate to recover the prescribed weekly payments for her support for the period beginning at his death and continuing until her death or remarriage. Petitioner and Mortimer Wosnitzer, now deceased, were married on March 10, 1940. On October 7, 1965, they executed a separation agreement. At that time, the children born of this union, to wit, Sandra and Judy, were respectively 19 and 14 years of age. The agreement, apparently executed in the context of an action pending between the parties in the Supreme Court, Queens County, provides in pertinent part: "FIFTH: The HUSBAND agrees to pay the WIFE for her support, until her death, or remarriage, and for the maintenance of said CHILDREN residing with the WIFE until they attain twenty-one (21) years of age, or until they marry or are self-supporting, or dies, the sum of $100.00 per week apportioned as follows: $75.00 for the WIFE and $12.50 for each child, upon the death or remarriage of the WIFE, the HUSBAND shall increase the weekly payment to each child who shall be under the age of twenty-one years so that they shall be paid a total sum of $25.00 weekly for each child, until they attain 21 years of age, or until they marry or are self-supporting, or dies

\* \* \* EIGHTH. The obligations of the HUSBAND to make \* \* \* the payments hereinabove provided for the support, maintenance and education of the CHILDREN shall survive the HUSBAND'S death and shall be a charge against his estate and shall be paid as part of HUSBAND's debts and obligations \* \* \* EIGHTEENTH: The HUSBAND agrees to maintain a certain life insurance policy upon his life, made by the Continental American Insurance Company, in the face amount of Ten Thousand ($10,000.00) Dollars, and cause same to be made irrevocably payable to the WIFE; to turn same over to the WIFE, to pay and continue to pay the premiums thereon and keep such policy in full force and effect, refrain from pledging or otherwise hypothecating or disposing of the cash surrender value, or the proceeds or benefits thereof; in the event the HUSBAND does not pay the premiums thereon, the WIFE may pay for same, and the amount so paid shall become a part of the maintenance and support heretofore mentioned; the WIFE may proceed to enforce the collection of the said sum in the same manner as if same were unpaid maintenance and support herein. Upon remarriage of the WIFE, the WIFE shall assign her rights therein to the CHILDREN, share and share alike." Petitioner obtained a Mexican divorce decree on October 26, 1965 which incorporated, but did not merge the separation agreement. Mortimer Wosnitzer died on October 17, 1972, leaving a will which he had executed on July 13, 1970.

In denying the application by petitioner to enforce her claim against the estate for support payments, the Surrogate observed that "the agreement at issue is devoid of any specific provision enunciating a contractual obligation by the husband obligating his estate to continue alimony payments after his death" and, although acknowledging the thrust of paragraph FIFTH of the agreement, declared with specific reference to paragraphs EIGHTH and EIGHTEENTH that "the remaining provisions clearly indicate that the issue of payments to the wife of alimony from her former husband's estate was considered and it was the intent of the parties to the agreement that there be no such payments".

Initially, it is noted that "the first and best rule of construction of every contract, and the only rule we need here, is that, when the terms of a written contract are clear and unambiguous, the intent of the parties must be found therein *(Hartigan v Casualty Co. of America,* 227 N.Y. 175, 179; *Brainard v New York Central R.R. Co.,* 242 N.Y. 125, 133). The applicability, to

separation agreements, of that fundamental rule, has been affirmed by this court on several occasions *(Galusha v Galusha,* 116 N.Y. 635, 646; *Stoddard v Stoddard,* 227 N.Y. 13; *Goldman v Goldman,* 282 N.Y. 296; *Schmelzel v Schmelzel,* 287 N.Y. 21)" *(Nichols v Nichols,* 306 NY 490, 496). The issue thus posed is whether the terms of the separation agreement are clear and unambiguous. In *Matter of Howe* (15 Misc 2d 1044, affd 8 AD2d 720), the Surrogate considered a separation agreement which committed the husband to make monthly support payments to the wife "during her lifetime, or until her remarriage". As here, the wife in *Howe* immediately after the execution of the agreement procured a Mexican divorce decree in an action in which the husband appeared, which decree incorporated, but did not merge the agreement. As here, the agreement was observed to be "drawn with care by attorneys of skill"; it was aptly noted that "where a separation agreement provides, as here, that the wife release any interest in her husband's estate either as an intestate distributee or by reason of a right of election it is not at all unreasonable that, in consideration for such release, she should require some security until a remarriage. A wife living apart under a separation agreement may, in the absence of a release of her rights, assert a claim to a portion of her husband's estate and when she releases her rights in consideration for monthly payments and the separation agreement also provides that a divorce may be obtained by either party, the procurement of a divorce does not invalidate the consideration ·for which the husband agreed to make the payments. While it would be possible for an agreement to distinguish between payments payable during the period of separation and payable after a divorce, this agreement draws no such line" *(Matter of Howe, supra,* pp 1046–1047). Separation agreements whereby the husband stipulates to make support payments to the wife during *her life* or until she remarries have been held not to terminate upon the death of the husband and to be binding upon his estate *(Matter of Davis,* 32 AD2d 667; *Murray v Murray,* 278 App Div 183, 189; *Barnes v Klug,* 129 App Div 192; *Matter of Grimley,* 200 Misc 901; *Matter of Herb,* 163 Misc 441; see *Wilson v Hinman,* 182 NY 408, 414). Patently, if the separation agreement herein is read without taking into consideration the provisions of paragraph EIGHTH, we must conclude in view of the aforesaid that petitioner would be entitled to support payments accruing after the husband's demise (see cases collected in Ann. 75 ALR2d 1085–1103). This

conclusion is reinforced by the rule that "it is a presumption of law, in the absence of express words, that the parties to a contract intend to bind not only themselves, but their personal representatives" *(Kernochan v Murray,* 111 NY 306, 308).

Paragraph EIGHTH specifically provides that the maintenance, education and support obligations undertaken by the husband as to the infant issue of the marriage, shall survive his death and be a charge on the estate. It is well recognized that minor children are not considered parties to a separation agreement executed by their parents and the parental obligation to support such children is unaffected by the agreement, although it will not be disregarded in serving as a guide in the evaluation of what is in the best interests of the child (NY Jur, Domestic Relations, § 543). Further "upon the death of the father, the common law casts the duty of support solely upon the mother, and not upon the father's estate, and she, if of sufficient ability, has to support and maintain her minor children, although not if the children have independent means of their own" (NY Jur, Domestic Relations, § 532). Parenthetically, paragraph EIGHTH of the separation agreement can be viewed as in the best interest of the petitioner at the time of execution of said agreement insofar as it could enable her to avoid or ameliorate her common-law obligation of support in the event of the husband's death. In light of these observations and under the circumstances herein, the fact that paragraph EIGHTH is silent regarding the continuation of support payments to the wife cannot serve as a basis for concluding, as a matter of law, that the parties clearly and unequivocally intended that the support payments to the wife mandated by paragraph FIFTH should terminate at the husband's death. What is required on the present state of the record is a hearing to determine the intent of the parties because, at most, the separation agreement may be viewed as ambiguous in this respect. The rationale delineated in *Cooke v Cooke* (2 AD2d 128) does not mandate a different result. In *Cooke,* it was critically noted that the husband had executed his last will and testament two days before the execution of the separation agreement and was living at *that time* with a woman, by whom he had a son, born a few months earlier, and whom he married upon obtaining a Florida divorce some two months after signing the separation agreement. Under these unusual circumstances, after trial of the action by the

former wife to recover support payments accruing subsequent to the husband's death resulted in dismissal of her complaint *(Cooke v Cooke,* 208 Misc 591), the Appellate Division, on her appeal, stated that the agreement was silent as to any promise by the husband to pay support to the wife after the granting of the divorce. The agreement contained "only the decedent's undertaking that as long as he and appellant 'shall live in a state of separation' he will pay her $400 a month 'for support and maintenance' and will also pay the carrying charges on their residence. In other words, the agreement was intended to provide for appellant's support while the parties remained in a state of separation but not divorced; whereas the divorce decree was intended to provide for appellant's support after the parties had been judicially divorced" *(Cooke v Cooke,* 2 AD2d 132; cf. *Matter of Howe,* 15 Misc 2d 1044, affd 8 AD2d 720, *supra).*

Regarding paragraph EIGHTEENTH of the separation agreement, the record in its present state is silent as to the effectuation of the premium payments thereunder, the status of the policy at the time of decedent's death, the size of decedent's estate at the time of the separation agreement and at death, all critical to resolution of the issue of intent raised by the ambiguity delineated above. Patently, the size of the decedent's estate at the critical times mentioned has relevance because, under paragraph ELEVENTH of the separation agreement, the parties released each other and their respective heirs, executors and administrators from any actions, claims and demands which they then had or might have against each other, "excepting only the obligations undertaken [under the agreement]". The presence of paragraph EIGHTEENTH cannot serve of itself to resolve the ambiguity noted herein. Maintenance of the $10,000 insurance policy and continuation of support to the petitioner for her life or until her remarriage serve on the face of the agreement as consideration for petitioner's release of her rights and privileges in her former husband's estate. Again we are confronted by the ambiguity inherent in the provisions of paragraph EIGHTH when viewed in the context of the entire agreement. It is the *silence* of paragraph EIGHTH, the *omission* of reference to petitioner which gives rise to the issue of intent. This agreement, prepared under the guidance of attorneys representing the respective parties, was drafted against the background of settled case law. Accordingly, paragraph EIGHTH, studied in conjunc-

tion with the other provisions of the agreement, may not serve as a talisman for concluding that it is obvious that the parties intended by this agreement that in the event of the husband's death, support payments for petitioner should cease.

KUPFERMAN, J. (dissenting). The petitioner is the former wife of the decedent, and the petition asks that she be considered a creditor of the estate so that she may continue to receive the sum of $75 weekly for her support pursuant to the terms of a separation agreement entered into between her and the decedent in 1965.

The separation agreement was of a normal routine type and provided that the furniture and household items become the exclusive property of the wife, and that she have the custody of the two children, and also provided for their support. The issue have since reached their majority. Subsequently, the wife obtained a foreign decree of divorce, which incorporated but did not merge the separation agreement. The husband died in October, 1972. The wife relies on the provision in the agreement for the payment to her "until her death, or remarriage" for the continuance of the support payments from her husband's estate beyond the date of his death.

The Surrogate properly found that she was not so entitled for the reason that it appeared from the other terms of the agreement that the "intent" of the parties did not provide for the payments to continue beyond the husband's death. The other terms of the agreement that the Surrogate postulated were that the payments for the children would survive the husband's death and "be a charge against his estate". Further, he obligated himself to maintain a life insurance policy in the sum of $10,000 "irrevocably payable to the Wife".

The case of *Wilson v Hinman* (182 NY 408, 412) made it clear that in the absence of specific agreement, support and alimony payments to the wife do not "survive her husband's life as a claim against his estate." (See, also, 1 Lindey—Separation Agreements and Ante-Nuptial Contracts, § 15, p 15–96 and June 1974 Cum Supp, § 15, p 210; 2 Foster and Freed, Law and the Family, Effect of Death of Spouse, § 25:6.) Only recently, this court in *Winter v Winter* (39 AD2d 69, affd without opn. 31 NY2d 983) interpreting section 236 of the Domestic Relations Law again made this clear. (See Foster and Freed, *supra,* 1974 Supp to § 22:14, p 66, n 20.)

There is no specific provision for payment from the estate, and the language used referring to the "death, or remarriage"

of the wife is obviously limited by the death of the husband. This is the more obvious by the various provisions in the agreement which cover circumstances in the event that he should die.

The majority now mandates a seemingly futile hearing for the elaboration of the obvious. What is more, problems of the Dead Man's Statute (CPLR 4519; see *Phillips v Kantor,* 31 NY2d 307) and the parol evidence rule will come into play (see Fisch, New York Evidence, § 56 *et seq.),* all quite unnecessarily.

I would affirm.

MARKEWICH, J.P., LANE and LYNCH, JJ., concur with LUPIANO, J.; KUPFERMAN, J., dissents in an opinion.

Order, Surrogate's Court, Bronx County entered on September 3, 1974, reversed, on the law, without costs and without disbursements, and the matter remanded for a hearing as to the issue of whether, under the separation agreement between petitioner and her former husband, after the latter's demise, petitioner has a cause of action against his estate to recover the prescribed weekly payments for her support for the period beginning at his death and continuing until her death or remarriage.