## WHITNEY v. WHITNEY ELEVATOR & WAREHOUSE CO.

(Circuit Court of Appeals, Second Circuit. December 12, 1910.)

### No. 147.

1. DIVORCE (§ 231*)—ALIMONY—CONSENT—DEATH OF HUSBAND.

   Since a wife's right to support by her husband terminates with the husband's death, the court, in divorce proceedings under the New York law, has no jurisdiction, in the absence of consent of parties, to impose a charge on the husband's estate for his wife's support after the husband's death.

   [Ed. Note.—For other cases, see Divorce, Cent. Dig. § 658; Dec. Dig. § 231.*]

2. EVIDENCE (§ 43*)—JUDICIAL NOTICE—DIVORCE PROCEEDINGS.

   Courts will take judicial notice of the fact that it is not infrequent in divorce proceedings for the parties to agree on details of alimony to be allowed.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 62; Dec. Dig. § 43.*]

3. DIVORCE (§ 236*)—ALIMONY—CONSENT OF PARTIES—CONTINUING PROVISIONS OF SEPARATION AGREEMENT—MORTGAGE.

   A separation agreement between husband and wife entitled her to receive from him $250 a month during her life, if she should not marry until after her husband's death. She sued for divorce, and obtained a decree, which continued the prior agreement, except for the substitution of a mortgage on different property for that previously executed to secure payment of the agreed amount, allowing the wife $3,000 per year during her natural life, irrespective of whether the husband lived or died. *Held*, that the decree would be regarded as having been made by consent

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of parties as far as the alimony was concerned, and hence the wife was not limited to support thereunder during the period of the husband's life.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 666, 667; Dec. Dig. § 236.*

Separation agreements, see note to Daniels v. Benedict, 38 C. C. A. 608.]

4. VENDOR AND PURCHASER (§ 231*)—BONA FIDE PURCHASERS—NOTICE FROM RECORD.

Where a real estate mortgage, executed pursuant to a divorce decree to secure support for the wife, and expressly referring to the decree, was properly recorded, a purchaser of the property was chargeable with whatever notice an inspection of the decree would have given, and was not a purchaser without notice.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 513, 515; Dec. Dig. § 231.*]

Appeal from the Circuit Court of the United States for the Western District of New York.

Bill in equity by Belle N. Whitney against the Whitney Elevator & Warehouse Company. Decree for complainant (180 Fed. 187), and defendant appeals. Affirmed.

This cause comes here upon appeal from a decree in favor of complainant for the foreclosure and sale under a mortgage of certain real estate on Oak street, in the city of Rochester. The mortgage was made February 21, 1893, by James W. Whitney, who then owned the property, which was afterwards bought by the defendant company. The mortgage was given as collateral security for a bond of Whitney, by which he bound himself, his heirs, etc., in the sum of $100,000, upon condition that he should pay to one Ashley, as trustee for Belle N. Whitney, the complainant, $250 on March 1, 1893, and the same sum on the 1st day of each and every month thereafter during her natural life. The Circuit Court found that there was due to complainant the sum of $24,483, with interest from October 27, 1909, and rendered judgment accordingly.

Perkins, Duffy & McLean (John Desmond, of counsel), for appellant.

J. G. Tracy (William G. Tracy, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The facts are quite fully set forth in the opinion below, which may be referred to. It will be found in 180 Fed. 187. The following excerpts will sufficiently indicate the questions raised and argued upon this appeal:

"In 1880 Belle N. Whitney was married to James W. Whitney. In 1889 Mr. and Mrs. Whitney, together with William J. Ashley, as trustee for Mrs. Whitney, entered into an agreement of separation. By this agreement Mr. and Mrs. Whitney agreed to live apart, and Mr. Whitney agreed to pay to Mrs. Whitney during the time she should remain the wife or widow of [James W. Whitney], or during her life if she shall not marry until after the death of [James W. Whitney], $3,000 a year in equal monthly payments. The agreement also provided for the payment of a certain sum with which to provide her a residence. It also provided that as security for the payment of the annuity Whitney was to execute and deliver a mortgage on certain land in the city of Rochester. It also contained a covenant by Mrs. Whitney

that she would at any time, upon request, release her inchoate right of dower in any of the property of Mr. Whitney."

These provisions were duly complied with. Mr. Whitney executed the mortgage, which covered other real estate than that now under foreclosure, and the annuity was for some years thereafter duly paid to Mrs. Whitney.

"In 1893 she brought an action against her husband for an absolute divorce. The defendant appeared by attorneys, but did not answer. The case was referred to a referee to take proof. * * * He reported in favor of an absolute divorce."

Thereafter a decree was entered which, inter alia, provided that Whitney—

"pay to the plaintiff, Belle N. Whitney, the sum of $3,000 per year, for and during her natural life, as a suitable allowance to said Belle N. Whitney, the plaintiff, for her maintenance and support."

It also provided that the mortgage previously given should be canceled, and that Whitney should give another bond and mortgage, on other real estate, as security for the payment of the $3,000 a year. Thereupon the old mortgage was canceled, and a new bond and mortgage given on the real estate which is the subject-matter of this suit. The bond and the mortgage both recite that they are given pursuant to the judgment of divorce. By various agreements to which Mrs. Whitney was a party the amount of $3,000 for certain specified years was reduced and the reduced amounts paid and accepted for those years.

James W. Whitney died October 1, 1907, and after July 1, 1909, the defendant company and the representative of his estate took the position that Whitney's death terminated his obligation under the divorce decree to pay any further amount for the wife's support and that therefore the mortgage was no longer operative. It contained a provision that in the case of a default there might be an election to have the whole amount secured immediately payable. This clause was availed of, and the amount found due by the Circuit Court includes unpaid arrears and the amount required to cover her probable duration of life. The amount found due in the decree is not disputed.

Except for possible subsequent statutory changes, to none of which has our attention been called, the law of this state relevant to the subject-matter of this appeal is fully and definitely set forth in two decisions: Johns v. Johns, 44 App. Div. 533, 60 N. Y. Supp. 865 (affirmed on opinion below 166 N. Y. 613, 59 N. E. 1124), and Wilson v. Hinman, 182 N. Y. 408, 75 N. E. 236, 2 L. R. A. (N. S.) 232, 108 Am. St. Rep. 820. With the conflict of law in other states we have no concern. Briefly stated, the law of New York is this: When a suit by a wife for absolute divorce comes before a court for determination, and it grants the relief prayed for, it is authorized to give by its decree, in the form of an allowance, a just and adequate substitute for the right of support which the divorce cuts off, and is also authorized to require security for the payment of the allowance. But since the right of support, if the marital relation were not disturbed,

terminates with the death of the husband, the court has no power to enlarge it, and impose a charge upon the deceased husband's estate for support of the wife, who secures a divorce, after his death. The reasons for this will be found in the exhaustive opinions cited supra. Therefore when in a decree of divorce the court undertakes to go further, and to provide that such allowance shall continue during the wife's natural life, after the husband's death, the decree is—

"subject in legal construction to mean during the lives of both parties, and upon the death of the defendant the binding force of the judgment in this respect comes to an end."

This is the language of the opinion in Johns v. Johns; but it should be noted that in that case the provision for an allowance continuing after the husband's death was inserted by the court itself in its decree. In Wilson v. Hinman, supra, after stating the law as above set forth, the court says:

"It may very well be that by the agreement of the parties alimony might be awarded in a different form from that provided for in the statute; that is to say, the parties might agree that a gross sum should be paid as alimony, or that an allowance should be made to the wife which would bind the husband's estate after his death. An agreement of that character would in no way contravene public policy, and the performance of it would, doubtless, be enforced by the courts. It is on this ground that the decision in Storey v. Storey, 125 Ill. 608 [18 N. E. 329, 1 L. R. A. 320, 8 Am. St. Rep. 417], proceeded. The present case is barren of any such feature."

In the case cited, apparently with approval, in the quotation supra, Storey v. Storey, it was held that, when husband and wife agree upon alimony, the court may embody their agreement upon that subject in its decree, and it will thereafter conclude the parties. The decree there before the court was entered by consent of parties, and provided that the husband should thereafter pay the wife, so long as she should remain sole, the sum of $2,000 per annum. On the same day the decree was entered the husband executed a bond and trust deed to secure the payment; the bond and deed being made binding upon "heirs, executors, administrators, and assigns"—the same language as in the bond in the case now before us. The court held that the annual allowance under the decree should be continued after the husband's death, so long as the wife remained sole and unmarried.

We may take judicial notice of the fact that it is not infrequent for the parties to agree upon the details of alimony allowance, without asking the court to settle the question. Inchoate dower rights, existing "wife's policies" of life insurance, are sometimes to be considered, and when the parties can agree on this branch of the controversy it would certainly seem desirable that they should.

This agreement may be embodied solely in some written contract between the parties; but we know of no reason why their agreement, if they make one, should not be embodied in the decree. Indeed, the New York Court of Appeals seems to countenance this very way of making the agreement effective. In the excerpt from the opinion in Wilson v. Hinman, supra, the suggestion is that:

"By the agreement of the parties alimony might be awarded in a different form from that provided in the statute."

This language plainly contemplates an agreement embodied in the decree.

The final question, therefore, is whether the divorce decree now before us is one entered by consent of parties, and embodying agreements which they were competent to make, or whether it records merely the decision of the court upon a controversy coming before it for adjudication. It may be noted that when the question of absolute divorce, terminating the marital relation with permission to the wife to marry again, came before the court, the parties had already provided for a separation which they contemplated should be permanent, and had made careful provision as to allowance, security, inchoate dower, etc. This had lasted four years, and rights had been acquired under it.

In addition to the provision that the allowance of $3,000 per annum should continue during the wife's natural life, irrespective of whether the husband lived or died—a provision the court had no power to make except by consent—the decree provides that the mortgage, on other real estate, given under the separate agreement, should be discharged. It also provides that certain money and securities held under that agreement by the wife's trustee should be surrendered. It secures to the wife the $8,000 provided for a residence, and certain life insurance policies referred to in the agreement. It further adjudges that, except as otherwise specifically provided:

"This decree shall in no wise affect said agreement of May 13, 1889, between the parties to this action, which said agreement shall remain unimpaired and in full force."

A decree such as this has all the earmarks of one entered by consent of parties and embodying their mutual concessions and agreements. It is difficult to believe that, with nothing before it save a question as to the granting of an absolute divorce and the exercise of its statutory power to award alimony, the court would have undertaken to make any such adjudication as to vested rights.

In addition we have affirmative evidence that the provisions of the decree as to alimony were inserted by consent of both parties. Counsel for Mrs. Whitney in the divorce action so testified. His testimony is objected to as incompetent, as an effort to vary the language of the decree by oral testimony. If the recitals of the decree indicated that there was any opposition to its terms, there might be force in this objection. But it very carefully avoids making any such statement. It recites the report of the referee, and proceeds to adjudicate "after hearing W. P. Goodelle, Esq., of counsel for the plaintiff, and Edward Harris, Esq., appearing on behalf of the defendant"; but it does not state that defendant's counsel was heard, or asked to be heard, or objected in any way to any of the provisions of the decree.

We do not base our decision, however, on this oral testimony of Goodelle. The decree itself, taken in connection with the proof as to existing conditions when it was applied for, furnishes convincing internal evidence that, on the subject of provision for the wife's support, it embodies the agreement of the parties.

We find no force in the suggestion that the defendant corporation, which subsequently bought the real estate from its president Whitney, was a purchaser "without notice." The mortgage, which was on record when the purchase was made, expressly referred to the decree, and the purchaser is chargeable with whatever notice an inspection of that decree would have given it.

We concur in Judge Holt's conclusion that plaintiff's right to payment during her life was not affected by the death of Mr. Whitney, and that the mortgage in suit is valid security for the amount due under it.

Decree affirmed, with costs.