In the Matter of the Estate of Frederick C. Tashenberg, Deceased.

Surrogate's Court, Erie County, October 9, 1933.

*James O. Moore* [*Preston M. Albro* of counsel], for the claimant Lillian C. Tashenberg.

*Feldman & Feldman* [*George J. Feldman* of counsel], for the executrix.

HART, S. On February 7, 1921, after an action for divorce had been instituted by the claimant, Lillian C. Tashenberg, against the deceased, Frederick C. Tashenberg, an agreement was made between both parties which, in substance, provided, among other things, the payment of twenty-five dollars per week by the deceased, who was the defendant, for the period of the natural life of his then wife while she remained unmarried, in the event of an interlocutory judgment of divorce being awarded to Lillian C. Tashenberg.

Frederick C. Tashenberg died September 28, 1931, leaving a last will and testament naming his second wife, Lillian C. Tashenberg (not the claimant), executrix of said will. The first wife petitions this court to compel the payment of a claim of $1,000 by virtue of the above agreement.

It is the contention of the executrix that the agreement was made in contemplation of divorce, and, therefore, void as against public policy. If this contention is correct, the law being that provisions in a judgment for a divorce to pay alimony during the life of a party cease upon the death of the husband, the claimant cannot collect against the estate.

Claimant relies to some extent upon the case of *Lake* v. *Lake* (136 App. Div. 47). In this particular case the facts set forth in the opinion show that on the same day the contract was executed plaintiff commenced an action for divorce, and the court held that it appeared that the contract was executed for the purpose of securing a divorce and was for that reason void against public policy.

In the instant case the action for divorce had been already commenced, and the agreement was made after the commencement. It was stated in the case of *Barnes* v. *Klug* (129 App. Div. 192, 195): " It is true that a husband cannot be compelled to support his wife except during his lifetime. Where a decree of absolute divorce or of separation is granted against him by a court, alimony will cease on his death, notwithstanding the decree should provide that

he pay the stipulated alimony during the life of the wife and direct that he should give security to insure its payment. (*Wilson* v. *Hinman*, 182 N. Y. 408.) When a decree of divorce is granted to an innocent wife against a guilty husband, the allowance of alimony to her is a continuance of his marital duty of support which the courts have power to compel him to furnish notwithstanding the dissolution of the marriage. This duty being upon him only during his lifetime the courts cannot compel him to make provision for its continuance after his death. But he can voluntarily make such provision for support to continue after his death by contract or otherwise if he sees fit so to do. By the contract annexed to the complaint appellants' testator agreed 'to make such payments for the term of her [plaintiff's] natural life,' and the modified agreement provided for the increased payments to be made according to the original contract. The appellants' testator could make such a contract if he desired. Nor was it necessary in express terms to state in the contract that it should be binding on his legal representatives. There is nothing in the language of the contract showing that he intended to bind only himself. It is a presumption of law, in the absence of express words, that the parties to a contract intend to bind not only themselves but their personal representatives. (*Kernochan* v. *Murray*, 111 N. Y. 306.) "

The case of *Wilson* v. *Hinman* (182 N. Y. 408, at p. 414) states: " It may very well be that by the agreement of the parties alimony might be awarded in a different form from that provided for in the statute; that is to say, the parties might agree that a gross sum should be paid as alimony, or that an allowance should be made to the wife which would bind the husband's estate after his death. An agreement of that character would in no way contravene public policy, and the performance of it would, doubtless, be enforceable by the courts. It is on this ground that the decision in *Storey* v. *Storey* (125 Ill. 608) proceeded."

The rule in the above case was followed by the Circuit Court of the United States for the Western District of New York in the case of *Whitney* v. *Whitney Elevator & Warehouse Company*, and the lower court sustained by the Circuit Court of Appeals (183 Fed. 678).

A very recent case, *Babcock* v. *Babcock*, involving an agreement very similar to the one now in question, is reported in 147 Misc. 900. It was determined that the agreement was enforcible against the estate.

It is my belief that this agreement was not made in contemplation of a divorce, but was made voluntarily by the defendant in

that action after the action for the divorce had been commenced. It is true that the tenor of the agreement is to the effect that the stipulations entered therein are contingent upon the event of an interlocutory judgment of divorce being awarded to Lillian C. Tashenberg. However, the summons and complaint having been served containing the allegations, the defendant, Frederick C. Tashenberg, must have had some knowledge as to whether or not the allegations were true and could be sustained. He was under no obligation to make the agreement, but for some reason voluntarily executed it.

Having provided therein for payments of twenty-five dollars a week for the period of the natural life of Lillian C. Tashenberg while she remains unmarried, I hold that the claim should be and is hereby allowed, and the prayer of the petitioner for an accounting by the executrix granted.

Let a decree enter accordingly.