Pearl Murray, Respondent, v. Jan Murray, Appellant.

First Department, April 24, 1951.

*Harold M. Geller* (*Theodore Shulman* with him on the brief), for appellant.

*Louis Jay Brecher* of counsel (*Maurice Freiman* with him on the brief; *Freiman & Brecher,* attorneys), for respondent.

CALLAHAN, J. Defendant appeals from two orders (1) awarding summary judgment to the plaintiff for the sum of $7,150, with interest and costs, and (2) denying defendant's cross motion for summary judgment dismissing the complaint.

The judgment awarded to plaintiff represents $50 a week for 143 weeks, the difference between alimony of $210 a

week fixed under a separation agreement and the sum of $160 a week, the reduced alimony under a modified judgment of separation. The question presented upon this appeal is whether plaintiff has the right to recover these sums or whether she lost any right to them when the alimony was reduced from $210 a week to $160 a week by modification of the decree.

The parties were married in 1940. There is one son, the issue of said marriage. Plaintiff in 1946 instituted an action for separation. She moved for temporary alimony and counsel fees and was awarded $200 a week and $1,750 counsel fees. The husband appealed from such allowances, whereupon the parties entered into a written agreement which provided, among other things, as follows:

" SIXTH: — That the present order of the Supreme Court, New York County, be modified, so as to provide that the husband shall pay to the wife the sum of SEVENTY FIVE DOLLARS ($75.00) per week, plus payment of the rent and telephone, as has been paid by the husband heretofore; if the wife obtains a decree of separation, the husband shall pay the wife the sum of Two HUNDRED TEN DOLLARS ($210.00) per week from the date thereof, plus the payment to her, within five (5) days after the entry and service of a copy of such decree of separation upon HAROLD M. GELLER, Esq., of a sum that shall equal Two HUNDRED TEN ($210.00) multiplied by the number of lapsed weeks from the effective date of the order of alimony to the date of the entry of such final decree of separation, less the sums paid her or for her account (such as rent, telephone, etc.).

" The foregoing weekly sum of Two HUNDRED TEN DOLLARS ($210.00) shall be paid to the wife weekly, on Thursday of each week, and shall continue to be paid, subject to the diminution hereinafter set forth, during her lifetime, until her death or until her remarriage, whichever shall occur sooner."

There followed a provision for reduction to $135 upon the death or emancipation of the child.

The " TENTH " clause of the agreement provided: " That in the action now pending in the Supreme Court, New York County, or in any other action instituted by the wife, she will not seek alimony or support or maintenance for herself and counsel fees, or support and maintenance for the said infant child or custody thereof in any wise contrary to the terms of this agreement, and this agreement shall be incorporated in any interlocutory decree of separation or divorce obtained by the wife."

The " ELEVENTH " clause of the agreement provided, in substance, that in the event that the wife should remarry, the

husband should pay solely for the support, maintenance and education of the child, and that the amount of the payments might be determined upon application to the Supreme Court. Pending such determination the parties agreed that the sum of $75 a week was to be the minimum payment. The said " ELEVENTH " clause also provided that in event of such remarriage, application might be made to the Supreme Court for an order fixing and determining the custody of the child, although the agreement contained express provisions with respect to custody up to such remarriage.

Other clauses of the agreement provided for the disposition of certain furniture and other personal property and for the return of bonds belonging to the wife.

The agreement was made binding on the heirs, executors and administrators of the parties.

After the execution of this agreement, defendant withdrew his answer in the wife's separation suit. An inquest was taken, and a decree of separation was thereafter entered November 4, 1946, providing for the payment of $210 a week as alimony and $1,750 as counsel fees. The decree further provided that " the defendant, Jan Murray, pay to the plaintiff the sums mentioned in the separation agreement and comply with the terms, covenants and conditions therein contained and deliver the property and bonds mentioned therein ".

After the entry of the separation decree, the husband paid the counsel fee and a lump sum representing the difference between $210 a week and $75 a week temporary alimony.

Defendant continued to pay permanent alimony at $210 a week until October, 1947, when he attempted to reduce the payments to $75 a week claiming inability to pay more. Plaintiff thereupon moved to punish him for contempt, and the husband cross-moved for modification of the decree by reducing the alimony to $75. Declining to follow the recommendation of a referee for reduction, a Special Term of this court ordered the payment of the $210 and fined defendant for contempt, and denied defendant's cross motion for reduction. Defendant appealed to this court, which reduced the alimony to $160 a week by modifying the separation decree accordingly and permitted the payment of arrears in installments (274 App. Div. 763). The power to modify the decree undoubtedly existed (*Fox* v. *Fox,* 263 N. Y. 68, 70; *Goldman* v. *Goldman,* 282 N. Y. 296).

Defendant continued to pay the sum of $160 a week down to July 20, 1950.

Plaintiff in the meantime obtained a judgment of divorce. Both parties have remarried. Plaintiff brings this suit for the difference between the $210 and $160 for the period between the date of modification of the separation decree and the date of her remarriage. Her action is based upon her alleged contractual right to collect $210 per week under the separation agreement, which she contends existed independently of the decree of separation and survived the latter.

Plaintiff relies largely on the authority of *Galusha* v. *Galusha* (116 N. Y. 635) pointing out that the present agreement like that in the *Galusha* case fixed the death of the wife as the event which would terminate the agreement. We think that the agreement in this case and the circumstances surrounding its execution are readily distinguishable from those in the *Galusha* case. There an agreement creating a contractual obligation to pay a fixed sum was entered into, which became binding without any judicial approval. Here the separation agreement was entered into after an action of separation had been brought and, aside from temporary alimony of $75 weekly, no liability was to exist until and unless a decree of separation was entered. In the *Galusha* case, the question was whether in a subsequent divorce action the court might terminate a binding agreement and award a larger amount as alimony. The decision was that the agreement was not affected by the acts constituting the grounds for divorce and should be permitted to stand and to measure the obligations for support so long as it remained in force. The agreement could, however, be attacked directly (*Galusha* v. *Galusha*, 138 N. Y. 272). Here we are not seeking to interfere with a concededly existing agreement, but are deciding only the question of whether the agreement to pay $210 existed independently of the decree for the period involved.

We need not leave to conjecture the reason for the somewhat unusual provisions in the present agreement. The wife frankly states in her papers that the purpose of the parties was to secure for the husband the right to deduct from his taxable income the amount of the payments, and the parties recognized that unless the payments were made under a judgment of separation, the deduction might not be allowed by the tax authorities. The wife also concedes in her papers that the decree of separation was the starting point for the husband's liability at $210 a week, and that the separation agreement did not become effective or operative until the separation decree was entered. She sums up her position by saying that, " It is patent, therefore, that it was not the Separation Agreement that was being

merged in the Separation Decree, but, on the contrary, the Separation Agreement only became vitalized and took effect after the Separation Decree was entered.''

We are asked by construction to declare that there was an intention to create concurrent obligations for the payment of $210 from the date of the decree both under the agreement and under the decree. At least, it is clear that unless a decree was entered, there would never be a contractual liability for the payment of more than $75 a week. If the wife had decided to rest on the agreement and not obtain a decree, if the court had refused to order $210 to be paid, or if the husband had died before a decree was entered, the contractual obligation for payment of $210 would never have existed. The question is whether the parties nevertheless intended that a legal liability for the payment of $210 was to exist from the time of entering the decree based upon the promise of defendant to pay rather than the decree. The parties must have realized that an application to the court for a decree would involve the exercise of judicial scrutiny not only of the evidence to warrant a judgment of separation, but that the agreement as to the alimony would be subject to approval of the court, which was required to act '' as justice require[d] '' under the statutory authority conferred by section 1170 of the Civil Practice Act. (See *Goldman* v. *Goldman, supra.*) This was not a situation where a contractual obligation was created to exist independently of the court's action, in which case the court would no doubt follow the sum fixed by contract as the measure of the support so long as the contract persisted (*Kyff* v. *Kyff,* 286 N. Y. 71; *Cain* v. *Cain,* 188 App. Div. 780; *Levy* v. *Levy,* 149 App. Div. 561).

In *Goldman* v. *Goldman* (282 N. Y. 296, *supra*) the court said (p. 302): '' The statute conferring upon the court power to direct the defendant to make suitable provisions ' as justice requires ' for the plaintiff's support may not be read as a mandate or even as a grant of power to the court to insert in the judgment in an action for divorce a direction to the husband to pay the amount fixed by the parties unless that amount does constitute such suitable provision for wife and children ' as justice requires.' ''

Concurrent obligations could have been created under an agreement and a decree (*Goldman* v. *Goldman, supra*), but before both would arise a contractual obligation would have to exist independently of the judicial action taken.

The decision in *Schmelzel* v. *Schmelzel* (287 N. Y. 21) is in no wise contrary to our present conclusions. There, an enforcible agreement had been made fixing the amounts to be paid for the wife's support and providing that it was to be incorporated in any judgment. The agreement had been upheld in an action to set it aside for fraud and duress, and it was incorporated in a judgment of separation. The court held that the alimony could not be increased over the amount fixed in the agreement so long as it was not impeached. Likewise, it may have been that here under the present agreement the wife could not ask for alimony larger than $210, which was fixed as a ceiling (see *Goldman* v. *Goldman, supra*).

The agreement in *Holahan* v. *Holahan* (191 Misc. 47, affd. 274 App. Div. 846, affd. 298 N. Y. 798), a case relied on by plaintiff, differs from the present in that it created an absolute contractual liability and stipulated that the provision in the divorce decree should in no way affect the obligations imposed by the agreement.

Plaintiff calls attention to a letter written by the defendant's attorney at the time he was seeking a reduction in alimony for his client, wherein he suggested the making of a new '' agreement '' based upon the present income of the husband. The use of this language would not amount to a practical construction of the contract, nor could it alter the legal effect of what the parties had done.

While the obligation of the husband under a decree would end upon his death, the parties might create a contractual obligation that would be binding upon his estate (*Wilson* v. *Hinman,* 182 N. Y. 408). This, in form at least, they attempted to do here. But it is not necessary for us to determine what sum would have been payable after the husband's death, if there had been no remarriage, or whether the obligation during such period would have then rested upon the agreement. Where husband and wife have entered into an agreement for support that is to become effective only as authorized by the court, a question might be raised whether they (in effect) have not attempted unlawfully to confer jurisdiction upon the court to grant support after the husband's death, which the court is without power to do. We are concerned only with the right to recover the difference of $50 for the weeks involved herein, and pass upon no other issue relating to the validity and effect of the agreement. We find that there was no contractual liability on the part of the husband during that period beyond $160 a week.

The orders appealed from should be reversed, without costs, plaintiff's motion for summary judgment denied and the judgment entered thereon vacated and defendant's motion for summary judgment granted and judgment directed to be entered thereon.

SHIENTAG, J. (dissenting). I dissent and vote to affirm.

The agreement executed by the parties cannot be considered a mere formal stipulation entered into to avoid the necessity of proof of the husband's ability to pay. The agreement comprehends many matters separate and distinct from the alimony agreements, such as custody, visitation, payment of certain of the wife's obligations, and transfer of insurance policies.

Moreover, the language of the agreement indicates, as the court below held, that the agreement was not intended by the parties to merge in the subsequent judgment. The agreement provided that the $210 weekly payment was to continue until the wife's death or remarriage. Provision is made for reduction of alimony in only one event: if the wife ceases to provide for the support of the child. No provision is made for modification in the event of change in the husband's income. Moreover, the wife bound herself not to seek additional alimony, support or maintenance for herself or for the child in the then-pending action or in any other action. These provisions indicate that the parties intended to arrive at this sum as a final and unchangeable figure, binding upon them both.

Indeed the defendant's attorney himself recognized this when he wrote suggesting the making of a new agreement between the parties after the final judgment had been entered, because of a reduction in the husband's income. It is significant also that the decree provides for the payment of alimony pursuant to the separation agreement and does not make provision for the incorporation of that agreement in the decree.

The orders appealed from should be affirmed.

DORE and VAN VOORHIS, JJ., concur with CALLAHAN, J.; SHIENTAG, J., dissents and votes to affirm in opinion in which GLENNON, J., concurs.

Orders reversed, without costs, plaintiff's motion for summary judgment denied, the judgment entered thereon vacated, defendant's motion for summary judgment granted and judgment is directed to be entered thereon. Settle order on notice.