ESTATE OF TRAVER: CLAYTON and others, Appellants, vs. TRAVER, Administratrix, Respondent.

*December 3, 1957—January 7, 1958.*

For the appellants Ayleen N. Traver and George L. Allen, trustee, there was a brief by *Trinke & Raup* of Lake Geneva, and oral argument by *William F. Trinke.*

For the appellants Lorraine Traver Wauters and Shirley Traver Clayton there was a brief by *Immell, Herro, Buehner & DeWitt,* attorneys, and *Edward T. Fairchild* of counsel, all of Madison, and oral argument by *Jack DeWitt.*

For the respondent there was a brief by *Burdick, Burdick & Christians* of Lake Geneva, and oral argument by *John B. Christians.*

Martin, C. J.    Pursuant to the stipulation between the husband and wife, the divorce judgment of January 30, 1952, provided:

"5. That the terms of the property settlement on file and of record in this action be and the same are hereby approved and in accordance therewith:

"(a) Plaintiff shall pay defendant five hundred dollars ($500) cash at the time of entry of judgment of divorce and in addition thereto he shall pay the fees of the clerk of the court in relation hereto, and transfer dwelling contents to defendant and pay $250 toward attorney fees thirty days after date.

"(b) Plaintiff shall pay to defendant as and for alimony the sum of two hundred dollars ($200) per month beginning as of January 1, 1952, and so continuing until the further order of the court, but in no case after the death of the defendant, Ayleen N. Traver.

"(c) [The $200 per month related to a standard price index and at any time such index should express a variation of ten points above or below its level at the time of the divorce either party may apply to the court, on notice to the other, and obtain an adjustment of the amount of alimony.]

"(d) [Defendant awarded the use and occupancy of the homestead for her natural life.]

"(e) [Plaintiff to pay taxes, insurance, and any repairs on the homestead exceeding $25.]

"(f) To make defendant secure in the alimony payments herein provided to be made, plaintiff shall execute and deliver to some person mutually acceptable to plaintiff and defendant as a trustee, the 'Broad street property,' so-called, such conveyance to be for the term of the life of defendant, with the remainder in case of her death to the daughters of the parties in equal shares as tenants in common; provided that if the death of defendant shall occur during the lifetime of plaintiff, the title to the real estate so to be conveyed in trust shall revert to the plaintiff. Nothing in the conveyance to the trustee shall impair the absolute domination and control of plaintiff over the property so conveyed in trust, nor shall in any way abrogate or impair plaintiff's right to the collection of the rents and profits of such real estate until and unless plaintiff shall default in the payment of alimony or in the performance of any of the provisions hereof requiring payment of money by plaintiff; and in such case it shall become the duty of the trustee to notify plaintiff of his intention to assume possession of the subject real estate and to receive and collect the rents and profits thereof in pursuance of the conveyance in trust and at the expiration of thirty days following such notice so to be given by the trustee to the plaintiff, the trustee shall move the court above named upon eight days' additional notice to plaintiff setting forth the fact and extent of such default and the court shall order the trustee to assume possession of the subject real estate and to collect the rents and profits.

"(g) The plaintiff shall pay the interest on the present mortgages covering the homestead and the 'Broad street property' as more fully described in that certain trust deed executed by the plaintiff to George L. Allen, trustee. To secure the performance of the plaintiff's obligation to pay alimony, the interest on the mortgages, and the benefits set forth in the property stipulation, the plaintiff shall execute a second mortgage on the Geneva street garage property, so-called, to the trustee hereinbefore referred to, said trustee to hold said mortgage on the terms and conditions set forth in the property stipulation executed on even date herewith and which is filed and of record in this action.

"(h) Except as herein expressly provided, defendant shall be divested of and from any and all interest in any and all the property and estate of the plaintiff."

Lyle Traver executed the trust indenture and mortgage required by the judgment under subs. (f) and (g) above. He made all the payments required under the judgment until the date of his death on April 28, 1955. On May 20, 1955, Ayleen Traver notified the trustee in writing that the May 1, 1955, alimony payment of $200 was in default. The trustee declined to act under the trust agreement, claiming no alimony was due after the death of Lyle Traver.

Thereafter, in these proceedings the administratrix included the Broad street property in the inventory and objections thereto were filed.

The question involved on this appeal requires the construction of that part of the judgment which incorporates the stipulation of the parties.

We must hold that the $200 monthly payment to the wife, provided for in par. 5 (b) of the divorce judgment, is alimony. As stated in *Maxwell v. Sawyer* (1895), 90 Wis. 352, 354, 63 N. W. 283:

"It is very clear that the allowance made to the wife by the decree of divorce was alimony pure and simple. It is so denominated in the judgment. It consists of an allotment of sums payable at regular intervals from year to year, and it is not declared to be a division of the estate; hence it must be construed as alimony."

Furthermore, the monthly payment "as and for alimony" was subject to revision by the court, sub. (b) using the language "until the further order of the court," and sub. (c) providing for an adjustment in the amount in accordance with variations in a standard price index. The provisions for revision would be meaningless if the monthly payment constituted a division of estate, since the court would have

no jurisdiction to modify a judgment providing for final division of property, after the expiration of one year. Sec. 247.32, Stats.; *Gray v. Gray* (1942), 240 Wis. 285, 3 N. W. (2d) 376.

It is true that the court uses the words "property settlement" in the introductory language of par. 5 and "property stipulation," referring to the stipulation between the parties, in sub. (g). The word "property," as so used, must be construed, however, in its general sense. In the stipulation the agreement between the parties was denominated "a satisfactory solution of the financial provision to be incorporated into the judgment of divorce." It dealt in large part with property,—the life estate of the wife in the homestead property, the conveyance of the Broad street property to the trustee "to make defendant secure in the alimony payments," the execution of a mortgage on the garage property "to secure the performance of the plaintiff's obligation to pay alimony, etc." Nowhere in the judgment or stipulation is the $200 monthly payment referred to as a final "property" division or settlement. Where it is mentioned it is referred to as "alimony." It is, of course, within the power of the court to provide for both alimony and a final division of property. *Schall v. Schall* (1951), 259 Wis. 412, 49 N. W. (2d) 429.

Ordinarily, alimony ceases at the death of the husband. *Maxwell v. Sawyer, supra.* The judgment here provided, in par. 5 (b), that the alimony payments shall continue until the further order of the court "but in no case after the death of the defendant, Ayleen N. Traver." The provisions of sub. (f), "to make defendant secure in the alimony payments," require the husband to convey the Broad street property to the trustee, "such conveyance to be *for the term of the life of defendant.*" From this language it would appear that the allowance of alimony was for the life of Ayleen

Traver. There is nothing in the judgment to indicate otherwise. The contingencies specifically provided for are: (1) If the wife died during the husband's lifetime, the title to the Broad street property was to revert to the husband,—in other words, the alimony secured to the wife by the trust was to cease at *her* death. (2) On the death of the wife the remainder in the trust property was to go to the children of the parties,—the implication being that if the husband preceded the wife in death, the trust would remain in effect to secure the alimony payments until she should die.

At the time of the divorce the parties had been married thirty-seven years. They had raised two daughters to maturity. While the amount of Lyle Traver's assets at that time is not shown, it appears from the divorce judgment that he owned the homestead, the Broad street property, and the Geneva street garage property. These items of real estate constitute the bulk of the assets listed in the inventory at the time of his death only about three years after the divorce and appraised at a net value of over $50,000. Thus, it was during the years of decedent's first marriage that he accumulated most of his fortune. It is stated in appellant Ayleen Traver's brief—and not denied by respondent—that at the time of the divorce she had no significant separate estate and "was not so circumstanced as to be able to earn her own living or to properly manage the commercial real estate which constituted the bulk of the property of her husband." That she had little business experience or acumen is borne out by the fact that at the time of Lyle Traver's death she had five uncashed alimony checks in her possession. She failed to file her claim for the amount involved, $1,000, apparently because she believed the checks to be as good as cash.

In any event, from all the circumstances shown, it appears that at the time of the divorce the husband was a comparatively wealthy and successful business man whereas Ayleen,

then in her late 50's, was a housewife with no estate of her own, unable to earn a living for herself, and inexperienced in the management of property. We may assume that had a division of estate been resorted to, she would have been entitled to at least one third. See *Gauger v. Gauger* (1914), 157 Wis. 630, 147 N. W. 1075.

Such a division, however, would have left Ayleen with management problems that she may not have been capable of handling. At any rate, the parties apparently concluded that alimony was the better "solution of the financial provision," and agreed that she should be made secure in the alimony payments by the creation of a trust by conveyance of the Broad street property for the term of her life. To insure that the trust property would secure Lyle Traver's obligations to her, it was further agreed that he should give the trustee a second mortgage on the garage property. These details of the arrangement agreed upon between them clearly indicate that the parties intended the alimony to continue during her life even though she should outlive her husband. One can hardly point to a single provision in that portion of the judgment which sets out the agreement of the parties, which does not indicate their basic intent that Ayleen Traver was to be made secure for her lifetime.

The authorities are divided on the question whether the court has power to provide for the continuance of alimony payments beyond the husband's death. As to the restricted view, it is stated in the annotations in 18 A. L. R., Alimony-Death of Husband, 1045:

"There are a number of cases which take the view that, in absolute divorce, a provision for regular, periodical payments to the wife for her maintenance and support should not relate to periods after the death of the husband; or, at least, that the presumption is that such a provision will not embrace such periods *unless they are specifically included.*" (Emphasis ours.)

The broader view is discussed at page 1050 *et seq.*

Our statute gives the court broad discretionary powers in such matters, but under the circumstances of this case it is not necessary to decide the question whether the court itself may order alimony for the life of the wife. Here the parties entered into a written contract providing that the wife should receive a monthly allowance for her lifetime, precisely for the purpose of incorporation into the divorce judgment. It is conceded that their agreement is embodied in the judgment. Neither our statutes nor good morals prohibit the payment, whether called alimony or something else, for the duration of the life of the wife.

While there is no case exactly in point in this state, it may be noted that in New York, which holds to the restricted view that the court has no power to enlarge the wife's right of support beyond the husband's death, it was held in *Whitney v. Whitney Elevator & Warehouse Co.* (2d Cir. 1910), 183 Fed. 678, 681, where the agreement in question provided for alimony to the wife during her life:

"We may take judicial notice of the fact that it is not infrequent for the parties to agree upon the details of alimony allowance, without asking the court to settle the question. Inchoate dower rights, existing 'wife's policies' of life insurance, are sometimes to be considered, and when the parties can agree on this branch of the controversy it would certainly seem desirable that they should.

"This agreement may be embodied solely in some written contract between the parties; but we know of no reason why their agreement, if they make one, should not be embodied in the decree."

In 1 Nelson, Divorce and Annulment (2d ed.), p. 516, sec. 13.35, it is said:

"Agreements between the spouses are sometimes construed to require payments to the wife after the death of the husband, although not expressly so providing. Contract

provisions for support of the wife to continue after the death of the husband may be approved by the court in a divorce action although the court would have no power to require payments after the death of the husband in the absence of a contract therefor." See cases cited thereunder.

The trial court held that the trust created by the agreement is a passive trust. We cannot agree. The three elements of a trust are present. See *Sutherland v. Pierner* (1946), 249 Wis. 462, 24 N. W. (2d) 883. The purpose for which it was created is within the scope of sec. 231.11, Stats. True, the contingency which it was intended to protect against, default of alimony payments, did not occur before the husband's death. But it did occur at the death and Ayleen Traver duly notified the trustee thereof, as contemplated in the agreement and the trust indenture.

Ayleen Traver is entitled to have her $200 monthly allowance continue for the duration of her natural life, and upon her death, title to the trust property known and referred to as the Broad street property is to vest in the daughters.

There was no reason for Ayleen to file a claim against the estate of the decedent. The payment of her monthly allowance is secured by the income from the Broad street property and upon proper application to the trustee and surrender of the five checks which she neglected to present for payment, the trustee will pay her the amount due under the divorce judgment.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment not inconsistent with this opinion.

FAIRCHILD, J., took no part.