Edward S. Silver, S.
In this accounting proceeding the issues raised by objections to the account were referred to a Referee. Various motions were addressed to his report. They are disposed of as hereinafter indicated.
The Referee recommended dismissal of the claim of Beatrice Stritch (hereinafter called Beatrice). She and testator were married in Miami, Florida, on March 7, 1945. Thereafter they entered into an agreement on April 30, 1951 which is the basis of her objections to the account herein. On the following day, May 1, 1951, Beatrice appeared in a divorce action brought in Florida by her husband, and the decree therein filed May 7, 1951 decreed that “the property settlement” be “ratified and confirmed and made a part of this Decree.”
Insofar as pertinent, the agreement provides for “ a settlement of all property rights and differences ”; that both parties have been fully informed by their respective attorneys of their respective rights and liabilities; that the husband pay the wife a stated sum “ to be paid weekly * # * for and during the lifetime of the Second Party (wife) or until she remarries, which payments are to be in full settlement and satisfaction of the care, maintenance and support of the Second Party (wife), it being understood and agreed that in the event of the remarriage of the Second Party (wife) the First Party (husband) shall be relieved of all further payments and benefits to the Second Party (wife).” (Emphasis supplied.)
‘ ‘ In addition to the said payments ’ ’ the husband agreed to convey certain described premises in Brooklyn to the wife. The agreement went on: “Except as herein otherwise provided, each of the parties * * * bars himself and herself of and from any and all claims, dower courtesy [sic] and other rights or interest in and to the property or estate of the other ” and specified that ‘ ‘ either party hereto may dispose of his or her property by last will and testament or otherwise as freely and for the same extent as though they had never married”, and each ‘1 waives the right of election to take against any last will or testament of the other ”. (Emphasis supplied.)
The provision for inclusion of the agreement in the divorce decree reads: “ In case the said parties hereto are divorced the settlement and other benefits herein provided in this agreement shall be accepted by the Second Party (wife) in lieu of any claim against the First Party (husband) for any allowance * * * or for the support, care and maintenance of herself, and it is further expressly stipulated that this agreement shall be incorporated in any decree of divorce or separation so obtained and that such decree shall accept the terms of this *744 agreement as a just settlement of all rights and claims of whatever kind or character on the part of the Second Party (wife) against the First Party (husband) or his property, estate or otherwise.” (Emphasis supplied.)
Nowhere in the agreement does the word “ alimony ” appear and nowhere is the agreement referred to as a “ separation agreement ”. The decree of the Florida court refers to it as a “ property settlement agreement ”. It appears from the exemplified copy of the transcript in the divorce proceeding that testator was asked by his attorney if he had made “ a property settlement ’ ’ with his wife. He answered yes. It will be further noted that, while the agreement attempts to waive the right of election against a will, it was not acknowledged in accordance with the provisions of section 18 of the Decedent Estate Law of New York. In addition to this, the execution of the instrument bears a striking resemblance to the form of execution employed in property settlement agreements in Florida between Florida residents. (See Underwood v. Underwood, 64 So. 2d 281, 284 [Fla.].)
Beatrice claims to be entitled to payments pursuant to the agreement after the death of her former husband. The estate representatives contend that the payment ‘ ‘ of sums in performance of such settlement could bind the husband only so long as he lived.” While asserting that the agreement is “ not an agreement for support and maintenance, but a settlement in which the wife agreed to accept stated sums in satisfaction of her claims ”, they argue that the agreement was superseded by the divorce decree and, accordingly, testator was not obligated to make payments beyond his lifetime. They insist this case “involves a foreign decree which could be amended only by a Florida court under Florida law, and over which the New York court had no power except to enforce * * * under the full faith and credit clause.” Beatrice likewise insists that the law of Florida must be given effect. There appears to be no question that the Florida decree must be given full faith and credit. (Aldrich v. Aldrich, 147 W. Va. 269; Aldrich v. Aldrich, 163 So. 2d 276 [Fla.]; Aldrich v. Aldrich, 378 U. S. 540; Johnson v. Muelberger, 340 U. S. 581; Nichols v. Nichols, 306 N. Y. 490 and cases cited therein.)
The Florida cases support Beatrice’s claim. In Scott v. Gratigny (166 So. 2d 816, 817 [Fla., 1964]) the decree of divorce provided that ‘1 alimony and support money to the Plaintiff [wife] is hereby decreed to be paid by the Defendant [husband] * * * during the remainder of the life of the Plaintiff, or until the remarriage of the Plaintiff ’ ’. There had *745 been no written agreement but an agreement had been reached by consent of the parties and their solicitors of record. In affirming the determination of the trial court awarding summary judgment in favor of the divorced wife payable out of the assets of the estate of her deceased husband, the court, speaking for the majority, said (p. 818): “ An examination of the authorities discloses that, as a general proposition, alimony awarded by a chancellor terminates upon the death of either of the parties or upon the remarriage of the wife. * * * However, there has been an exception to this general rule which permits a former wife to secure payments in the nature of alimony from the estate of her deceased former husband, when there has been an agreement providing for payments to her for as long as she may live or until she remarries. * * * We hold that the judicial recognition of an agreement between parties, providing for the payment of periodic sums of money unto the divorced wife during the remainder of her life or until her remarriage, is a sufficient recognition of the agreement to warrant its enforcement, as adjudicated by the chancellor. It seems apparent, from the reasoning in Underwood v. Underwood, supra; Johnson v. Every, Fla. 1957, 93 So. 2d 390, that, unless it is specifically agreed to the contrary, payments to a wife which are described as permanent in nature will continue subsequent to the demise of the former husband, if she is not prevented by any other condition subsequent from collecting the same.” (Emphasis supplied.)
The dissenting opinion pointed up the distinction recognized in Florida between alimony and payments pursuant to a property settlement, saying (p. 819): “ Since there was no property settlement, and therefore no agreement in connection with a property settlement for the payment of sums to the wife after the husband’s death, the agreement referred to in the decree, such as it was, concerned alimony. * * * In Underwood v. Underwood, supra, the Supreme Court saw no place for an agreement by a husband to pay alimony beyond his lifetime, except as an incident to a property settlement ”.
In Underwood v. Underwood (supra, p. 284) it was stated ‘ ‘ this agreement shall be presented to the Court for the inclusion of the terms hereof in any final decree of divorce as and for all of the wife’s claim against the husband for her support.” The decree of divorce did not set forth the agreement in full. The wife remarried and sued to enforce the payments due to her after her remarriage. As in the instant case where the administrators c. t. a. urge that the Stritch agreement was merged in the decree, the Florida trial court *746 held the agreement merged in the decree and, inasmuch as the decree awarded alimony, relieved the former husband of all further obligation to pay alimony. In reversing the lower court, Florida’s highest court, the Supreme Court of Florida, said (p. 287): “ The underlying basic error committed by the lower Court was his conclusion that 1 the stipulation attached to the Bill of ¡Complaint merged in the final decree * * *.’ ” The lower Court has constructed on this underlying and basic error another error, viz., that the payments owed by the husband to the wife are alimony and therefore, governed by the decisions relating to payments of alimony to a wife after her remarriage.” Of importance to the interpretation of the Stritch agreement and decree is the language quoted with approval (1952 Cumulative Supplement to Yol. 17, p. 138, Am. Jur.): “It has been held without exception that where a separation agreement provides for the continuance of payments to the wife after death of the husband, the right of the wife to receive payments after the husband’s death is not affected by an intervening divorce decree which either incorporates the former agreement or substantially provides for such payments in accordance therewith.”
In Johnson v. Every (93 So. 2d 390 [Fla.]) the property settlement agreement, although not incorporated in the decree, was for all practical purposes made a part of the decree. In addition to the agreement of the husband to pay the wife stipulated sums weekly which were to cease upon the death of the wife, the agreement, like the Stritch agreement (p. 392) “provided that the wife and husband mutually released the interest of each other in the respective estates of each other. In other words”, said the court “ in exchange for the weekly payments for support and maintenance and other considerations, the appellant-wife surrendered any and all claim she might have against her husband’s estate.” The court wrote: “"We subscribe to the proposition that in the absence of an express contract or a provision in a decree such as the one before us, a divorced husband’s liability terminates with his death. On the other hand, where the decree or property settlement agreement expressly provides for the continuance of the payments ‘ until the death of the wife ’ then the husband’s estate remains liable for the obligation in the same manner as it is liable for any other legitimate obligation outstanding at the time of his death. Here there was a provision in the final decree as well as in the property settlement arrangement to the effect that payments would be made during the life of the wife or until she remarried.” (Cf., in the Stritch agreement: “for *747 and during the lifetime of the” [wife] “ or until she remarries”.) “ She is still living and she has not remarried, and consequently, the conditions for the termination of the weekly payments have not occurred.” (Emphasis supplied.) The court’s view of the law as expressed in Johnson v. Every (supra) (1957) was reaffirmed in Aldrich v. Aldrich (163 So. 2d 276 [1964], supra).
These authoritative expressions of the law of Florida compel, in accordance with the full faith and credit claus'e of the Constitution of the United States, modification of the recommendation of the Referee and allowance of Beatrice’s claim. As argued by the administrators c. t. a. in their brief, the agreement is not one for support and maintenance, “but an agreement in which the wife agreed to accept stated sums in satisfaction of her claims.” The payments to Beatrice for and during her lifetime or until remarriage are expressly ‘£ in lieu of any claim ’ ’ against the husband £ £ his property, estate or otherwise.” In other words, in exchange for the weekly payments for and during Beatrice’s lifetime and other considerations, she surrendered all other claims against her husband, his property or his estate. By the terms of the agreement — incorporated in its entirety in the decree — husband and wife stipulated that the decree “ shall accept the terms of this agreement as a just settlement”. Neither agreement nor decree provided for payment of alimony and there is nothing in either document from which it may be reasonably inferred that the parties or the court intended the payments to be alimony as that term is generally understood.
Although compelled by the cited Florida authorities to allow the claim of Beatrice, even considered as a New York agreement incorporated in a New York judgment, as was done by the Referee, Beatrice’s claim is no less valid. The administrators c. t. a. assert that where parties intend that the contract shall continue to have independent existence, despite the entry of a decree, the parties provide specifically that the agreement shall not be merged in the decree and shall survive the same; when parties intend that their rights shall be determined only by the decree, they provide that the agreement shall be incorporated in the decree.
At least one text writer has voiced his opinion that the view of the majority of States, including New York, is that an agreement of separation containing no specific provision against merger is presumed to survive the judgment into which it has been incorporated, and this presumption of survival is stronger when the agreement is a property settlement. (Lindey, Separa *748 tion Agreements and Ante-Nuptial Contracts, 1964, § 31, subd. 9, par. A.) No New York case is cited by the administrators c. t. a. in support of their contention that agreements are merged in the judgment unless the agreement specifically provides for its survival and none has come to the attention of the court except Meyer v. Meyer (10 Misc 2d 728) noted infra. A short answer to their thesis would be that cases such as Cooke v. Cooke (2 A D 2d 128, infra) and Murray v. Murray (278 App. Div. 183, infra) could have been quickly disposed of on that ground alone since neither agreement provided explicitly for survival of the judgments into which they were incorporated. That theory was not considered in either opinion. And, if the administrators c. t. a. be correct, much that was said in Goldman v. Goldman (282 N. Y. 296, infra) must be deemed erroneous for the Goldman agreement contained no specific provision for its survival of its agreed-to incorporation in the judgment. Goldman exemplifies — and Cooke and Murray make clear — what the courts mean when they say that a pre-existing agreement has an existence independent of the judgment into which it has been incorporated by its terms.
Before considering the New York authorities one most unusual aspect of the Stritch agreement with regard to the presence or absence of specific provisions may be appropriately noted. The contract first provides for payments to Beatrice for and during her lifetime or until her remarriage. Later on in the same paragraph it clarifies the obvious this way: “It being understood and agreed that in the event of the remarriage of the Second Party (wife) the First Party (husband) shall be relieved of all further payments and benefits to the Second Party (wife).” The presumption is that, having explicitly expressed the one condition which was intended to terminate the obligation to pay Beatrice the stipulated payments for and during her lifetime, the parties expressed all of the conditions which were to terminate them. (Arthur v. Baron de Hirsch Fund, 121 F. 791, 796.) However, in view of the cases hereinafter cited it is unnecessary to resort to the maxim “ expressio unius est exclusio alterius ”— the expression of one thing is the exclusion of another — for the interpretation of the legal effect of this contract. At the time the agreement was made the divorce action had already been filed. It 'seems inconceivable that cessation of payments upon Beatrice’s remarriage should be treated with such attention under the circumstances if the parties intended merger of the agreement into the decree because alimony payments, qua alimony, under a merged agree *749 ment would normally cease upon the remarriage of the wife.
Still another somewhat unusual provision of the Stritch agreement may be noticed at this point. The provision providing for incorporation in the decree of divorce specifies that “ such decree shall accept the terms of this agreement.” Although there was no such explicit language in the contract in Van Horn v. Van Horn (196 App. Div. 472, 482) the court remarked that where there are provisions in the contract which were inappropriate and unusual in a decree for absolute divorce — as there are in the Stritch agreement — the decreeing court, “ without the consent of the parties * * * and adequate proof, could neither have annulled nor have modified the separation agreement nor have changed the obligations of the husband with respect to the support of his wife * * * as provided in the separation agreement,” and expressed the view that, under such circumstances, the parties intended to continue the agreement as such without merging it in the decree.
In the absence of an explicit statement of merger or non-merger after incorporation, the courts have examined the agreements in the setting in which they were made (Kunker v. Kunker, 230 App. Div. 641; Meyer v. Meyer, 5 A D 2d 655; Giannone v. Giannone, 27 Misc 2d 960) for (1) evidence of the parties’ intention to make their rights dependent, not on the contract itself, but only on the action of a court, or (2) evidence of the parties’ intention to create concurrent obligations both under the agreement and under the judgment, the obligations under the agreement to be enforced as contract actions are enforced and the obligations under the decree to be enforced as provided for by statute, including drastic enforcement by means of contempt and sequestration. As to the agreements creating concurrent obligations, Chief Judge Desmond in McMains v. McMains (15 N Y 2d 283, 285) called attention to two rules: “ first, that support agreements covered into divorce judgments are valid and binding until set aside for ab initio invalidity * * * second, that subsequent decree modifications leave the prior nonmerged support contract still in existence qua contract.” (Citations omitted.)
In Meyer v. Meyer (5 A D 2d 655) Special Term held (10 Misc 2d 728) that the Meyer agreement, which was incorporated in the judgment of divorce, was merged in the judgment. The ground of Special Term’s holding was that the agreement did not contain any provision that it was to survive the judgment. In modifying Special Term’s determination the Appel *750 late Division held that the party asserting merger of the contract into the judgment had not at that time established such merger, and predicated its decision on the basis of a non-merged agreement. In Sureau v. Sureau (305 N. Y. 720) the Sureau agreement provided for incorporation in any judgment rendered between the parties. There was no explicit provision in the contract for nonmerger in the judgment. The Court of Appeals affirmed an order of the Appellate Division remitting the matter for a trial of the issue of fact whether the parties intended that the Nevada judgment and its subsequent modifications should operate as a merger of the separation agreement and bar its survival of the judgment.
In Cooke v. Cooke (2 A D 2d 328, supra) the agreement sued upon provided that so long as the parties lived separate and apart the husband would pay the wife $400 per month ‘ ‘ during such period of separation”. In the event a decree of divorce were granted the decree was to contain specified provisions in full satisfaction of claims they might have against each other “with reference to their property or alimony,, (p. 130; emphasis supplied) including a provision that the husband pay the wife $475 per month “ during her lifetime ”, with qualifying provisions that the payments might be reduced if his net income for any year were less than $10,000. Unlike the Stritch agreement which contains an unequivocal agreement that the husband will pay the wife during her lifetime, the court found the Cooke agreement contained no agreement by the husband to pay any sum whatsoever to the wife except during the period of their separation. As the court observed (p. 132) the Cooke agreement “ will be searched in vain for any promise or undertaking by the husband to pay appellant [the former wife] permanent alimony after the granting of the divorce. The agreement merely sets forth in extenso the specific provisions which the divorce decree shall contain ‘ in the event a decree of divorce shall be granted to either party ’ ’ ’. The court concluded “ that the agreement was intended to provide for appellant’s support while the parties remained in a state of separation but not divorced; whereas the divorce decree was intended to provide for the appellant’s support after the parties had been judicially divorced.”
The trial court in embodying in the Cooke decree the provision for the payment to the wife during her lifetime, put into the decretal provision a term for payment of the alimony which it had neither power to decree nor power to enforce under the decree. “ The jurisdiction of the courts of this State in matrimonial actions is limited to such powers as are expressly *751 conferred upon them by statute.” (Adelman v. Adelman, 3 A D 2d 839; Langerman v. Langerman, 303 N. Y. 465.) The sole power possessed by the courts of this State to award alimony in a divorce judgment is found in section 236 of the Domestic Delations Law and its predecessor statutes, which gave the courts power to provide suitably for the support of the wife. Wilson v. Hinman (182 N. Y. 408) held that the power of the court created by statute to direct payment of alimony was a power to direct payment only during the lifetime of the husband. Although the decree of the Supreme Court in that ease directed payments to the wife as long as she might live, the Court of Appeals held that the wife had no cause of action for moneys after the death of husband where there was no agreement between husband and wife as to the duration of the payments. It may be noted here that the Stritch agreement was intended to and did provide for Beatrice’s support whether or not there was a divorce, and the agreement specifically enjoined modification of the agreement upon its incorporation into the decree of divorce.
In Cooke the former wife’s cause of action based on the agreement was held insufficient on the ground that there was no promise by the husband in the agreement to make payments for the lifetime of the wife. The court also stated that a complaint based on the decree would also be insufficient on the ground that a divorce decree which provides merely that alimony payments during the wife’s life imposes on the husband only the continuance of his former marital obligation, that is, the obligation to make payments only so long as he may live. In its decision, the court drew attention to the distinction between cases where the wife’s right to payments arises only out of the action of a court, as was the situation in Cooke, Wilson and in Hinmcm, and those cases where the wife’s right to payments existed independently of any action by a court. By its citation of Murray v. Murray (278 App. Div. 183) and Goldman v. Goldman (282 N. Y. 296) the court invited a comparison between the Murray and Goldman agreements.
The Murray separation agreement provided for payments of $75 per week plus payment of rent and telephone. If the wife obtained a decree of separation the husband was to pay the wife $210 per week from the date thereof. A decree of separation thereafter entered provided for the payment of $210 per week. This decree was subsequently modified by reducing the payments to $160 per week. Later a judgment of divorce was obtained and both parties remarried. The former wife sued for the difference between $210 and $160 for the period between *752 the modification of the separation decree and her remarriage. She based her action upon her alleged contractual right to collect $21.0 per week under the agreement. In granting the husband’s motion for summary judgment the majority opinion (p. 187) noted that “ no liability was to exist until and unless a decree of separation [except for the amount specified of $75 per week] was entered. * * * Here we are not seeking to interfere with a concededly existing agreement, but are deciding only the question of whether the agreement to pay $210 existed independently of the decree for the period involved.” The court found (p. 189) that there was no liability on the part of the husband during the period of the amended decree, beyond $160 per week. The court pointed out (p. 188): “ Concurrent obligations could have been created under an agreement and a decree (Goldman v. Goldman, supra), but before both would arise a contractual obligation would have to exist independently of the judicial action taken.” (Emphasis supplied.)
In Goldman v. Goldman (282 N. Y. 296, supra) the husband and wife entered into a separation agreement defining the payments the husband should make. In accordance with the express terms of the agreement it was incorporated in a judgment of divorce. There was no explicit statement that the agreement was not to be merged in the judgment. The court subsequently modified the judgment by directing the husband to pay a lesser sum than the sum stipulated in the agreement. In affirming the court’s power to so modify the judgment of divorce, the court wrote (p. 305): “We pass upon the effect of the separation agreement only so far as is necessary to support the conclusion that the agreement cannot and does not limit the power of the court conferred by statute. We point out here that the direction of the court that the defendant [husband] shall pay to the plaintiff [wife] a sum less than he agreed to pay does not relieve the defendant of any contractual obligation. [Emphasis supplied.] The direction of the court may be enforced in the manner provided by statute and the plaintiff may still resort to the usual remedies for breach of contractual obligation.” The agreement in this case was not dependent on the action of any court to.give life to its terms.
It is indeed difficult to distinguish the Stritch agreement from the stipulation incorporated by its terms in the judgment entered in Matter of Grimley (200 Misc. 901) cited with approval in Cooke v. Cooke (supra) and Matter of Howe (15 Misc 2d 1044, affd. 8 A D 2d 720). The provisions of the Grimley stipulation and the provisions of the decree directed payments to the wife ‘ ‘ during her life. ’ ’ There is no indication that the *753 stipulation therein contained any reference to its survival of the judgment about to be entered. The court held that the contract obligated the husband’s estate to continue payments to his wife for her life. The administrators c. t. a. argue that such determination was predicated on the fact that the husband had deposited securities in escrow to secure weekly payments of alimony. These escrow provisions, according to Surrogate Fbaxkenthalepv, were for the plain purpose of securing to the widow “payment of the portion of the deceased’s estate to which she would be entitled under the will or in intestacy ” (p. 904), and not, as argued, to secure her rights to alimony after her husband’s death. In fact, nothing appears in the decision itself to form a basis for the determination for the continuance of the payments beyond her husband’s death other than the words “ during her life ” in the stipulation incorporated in the judgment. In effect, it was held that the agreement as made was not dependent upon the action of the court and had an existence independent of court action. Like the agreements in Galusha v. Galusha (116 N. Y. 635), Goldman v. Goldman (supra), Durland v. Syracuse Trust Co. (230 App. Div. 786), Barnes v. Klug (129 App. Div. 192), Matter of Embiricos (184 Misc. 453), Matter of Herb (163 Misc. 441), Matter of Tashenberg (149 Misc. 124), Babcock v. Babcock (147 Misc. 900, affd. 239 App. Div. 884), Matter of Golding (127 Misc. 621), the Stritch agreement was not dependent on court action for the existence of Beatrice’s rights thereunder whether or not incorporated in a judgment pursuant to its terms. Those rights were, under the contract, to exist independently of the action of any court.
Of course, evidence within or extrinsic to the agreement itself could limit the term of payment to the lifetime of the husband when such appeared to be the intention of the parties. The alternative basis of the decision in Cooke v. Cooke (supra) and the basis of decision in Matter of Porter (208 Misc. 611) was that the terms of the agreement showed that the stipulated payments for life of the wife were dependent on the continued life of the husband, especially where the payments agreed to were measurable by the income of the husband. As in the agreement in Barnes v. Klug (supra), in the Stritch agreement there is ‘1 nothing in the language of the contract showing ’ ’ the husband ‘ ‘ intended to bind only himself. ’ ’
A number of eases frequently cited to show that alimony ceases upon the death of the husband are readily distinguishable from the instant matter. In Wilson v. Hinman (182 N. Y. 408, supra) there was no agreement as to the duration *754 of the payments to the wife. The judgment of divorce, as amended, awarded alimony in a stated sum “ so long as she shall live ” and provided that the husband give security for the payment of such alimony and required the execution and delivery of a mortgage. The court held that the obligation to pay alimony ceased at the death of the husband. In Johns v. Johns (44 App. Div. 533, affd. 166 N. Y. 613) there is no mention of an agreement between the parties. In Matter of Bell (121 Misc. 795) a policy of insurance on the life of the husband had been assigned to the wife. Surrogate Foley held (p. 796): “ The provisions in the agreement for the assignment of an insurance policy to the wife plainly contemplated the termination of the agreement by the husband’s death and made provision for her support upon that event.” In Matter of Junge (125 Misc. 707, 709-710) it was noted: “In the absence of specific directions that the payments shall be made during the life of the wife ” the court could find nothing to warrant the assumption that they were to continue after his death. In Junge as in Cooke v. Cooke (supra), decedent had executed a will which contained provisions for the wife after the husband’s death. In Matter of Baratta (199 Misc. 246, affd. 279 App. Div. 992) the terms of the separation agreement did not expressly specify that the payments were to continue during the lifetime of the wife. In Lepsch v. Lepsch (275 App. Div. 412) the agreement contained no provision for the payment of alimony after the husband’s death. In Matter of Bernstein (25 Misc 2d 717), only the judgment of separation directed payments to the wife “ during her life Other than in the judgment there was no allusion made to the time or duration during which the payments were to be made. In Matter of Kahn (N. Y. L. J., Jan. 5, 1965, p. 18, col. 8) the payments were specified “ as and for alimony.”
Tri the instant matter the administrators c. t. a. resist a full hearing of the circumstances surrounding the making of the Stritch agreement and insist that the question of survival of the agreement be determined by the court solely on the record now before the court. There is neither in the record nor in the agreement itself any evidence that the parties intended the agreement to merge in any decree made. The provisions of the agreement and the circumstances now in the record surrounding its execution indicate the parties intended the agreement to survive the decree.
Thus, under Few York law as well as under Florida law, Beatrice’s claim is valid and must be allowed Her objections to the account are sustained. Her motion to overrule so much *755 of the Referee’s report as disallows her claim is granted. Her motion for alternative relief to take proof of the circumstances surrounding the execution of the Stritch agreement is denied as academic. That part of the motion of the administrators c. t. a. for an order confirming the report is denied insofar as it relates to the claim of Beatrice.
The remaining motion by an alleged creditor to modify the report is denied. The report however is modified so as to conform to the agreement of the settlement of a claim appearing on page 314 of the record. The motion of the administrators c. t. a. is granted in all other respects.